UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| HOBERT K. SANDERSON, JR. and ) | |
| DENISE C. SANDERSON ) | Case No. 17-05040-5-JNC |
| ) | Chapter 11 |
| Debtors. ) | |

### SECOND AMENDED MOTION FOR PRIVATE SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS

**COME NOW** HOBERT K. SANDERSON, JR., and DENISE C. SANDERSON (the "Debtors"), by and through their undersigned counsel, and respectfully move this Court for an Order authorizing a private sale of certain real estate described herein free and clear of liens pursuant to 11 U.S.C. § 363, and in support thereof show unto this Court as follows:

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. This Court has authority to hear this matter pursuant to the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

3. The Debtors filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code on October 13, 2017 (the "Petition Date"), and currently operate as Debtors-in-Possession.

4. The Debtors own as tenants by the entirety a certain parcel of real estate located in Jones County, North Carolina, bearing parcel identification number 449695126500, and lying and situated off State Road 1122, Trenton Township, and consisting of 163.69 acres, more or less (154.9 assessed acres), and being more particularly described in that deed recorded at Book 331, Page 550, Jones County Registry (the "Property").

5. This Motion is made pursuant to the provisions of §§ 363(f), 105, and 1101, *et seq.* of the Bankruptcy Code.

6. Pursuant to § 363(f) of the Bankruptcy Code, the Debtor may, after proper notice and Court approval, sell property free and clear of all liens, encumbrances, rights, interests, and

claims of record thereon.

7. The proposed sale is outside the ordinary course of business. However, the Debtors have determined that it is in the best interests of the Debtors and their creditors to liquidate the property in order to reduce secured claims against the estate. The Debtors believe that the reorganization of the farming operation will not be significantly impaired by the loss of the Property.

8. Hill Heirs Properties, LLC ("HHP"), has tendered an offer to purchase the Property for cash in the amount of $480,000.00, and the Debtors propose to accept said offer subject to this Court's approval. A true and accurate copy of the Offer to Purchase is attached hereto and incorporated by reference.

9. HHP is a North Carolina limited liability company and is sometimes referred to herein as "Buyer."

10. The private sale of the Property is being proposed in good faith, will be in the best interests of the Estate, and will be made for a sound business purpose, to wit the proposed sale may allow the Debtors to receive a maximum return for the holders of liens against the Property. Upon information and belief, the following claim valid and enforceable liens against the Property:

(a). The Jones County Tax Collector, by virtue of its statutory *ad valorem* tax lien.

(b) Rabo AgriFinance LLC, by virtue of that Deed of Trust recorded at Book 356, Page 331, Jones County Registry, on April 18, 2012 (claim amount $4,751,404.42).

(c) Crop Production Services, Inc., by virtue of those Deeds of Trust recorded at Book 380, Page 14, and Book 380, Page 31, on September 28, 2015 (claim amount $1,164,575.40).

(d) Joshan Enterprises, LLC, by virtue of judgment recorded against the Debtors and others, docketed in Jones County on September 19, 2016 at 16 T 14 (amount unknown).

(e) Delage Landen Financial Services, Inc., by virtue of judgment recorded against the Debtors and others, docketed in Jones County on January 5, 2017, at 17 T 1 (estimated amount $115,000.00).

(f) Monsanto, Inc., by virtue of judgment recorded against the Debtors and

others, docketed in Jones County at 17 T 5 (estimated amount $124,165.93).

        (g)     Susquehanna Commercial Finance, Inc., by virtue of judgment recorded against the Debtors and others, docketed in Jones County on September 25, 2017, at 17 CVS 94 (estimated amount $15,500.00).

11. The Debtors and the proposed Buyer have agreed that if the sale is approved, the Debtors will continue to farm the Property for 2018.

12. Buyer is not related to the Debtors or otherwise an insider of the Debtors. In the interest of full disclosure, however, it is noted that the members of HHP are the children of John C. Howard, Jr., who is the provider of postpetition financing to the Debtors which is the subject of a separate motion. Mr. Howard owns no interest in HHP.

13. The Debtors have received no other offers for the Property.

14. The Debtors assert that this proposed sale was negotiated in good faith and represents a fair price for the Property based on current market conditions.

15. The Debtor asks that the sale of the property be made free and clear of any and all liens, encumbrances, claims, rights and other interests, including but not limited to the following:

        a.     Any and all property taxes due and owing to any City, County or municipal corporation, and more particularly, to the Jones County Tax Collector.

        b.     Any and all remaining interests, liens, encumbrances, rights and claims asserted against the property, which relate to or arise as a result of a sale of the property, or which may be asserted against the buyer of the property, including, but not limited to, those liens, encumbrances, interests, rights and claims, whether fixed and liquidated or contingent and unliquidated, that have or may be asserted against the property or the buyer of the property by the North Carolina Department of Revenue, the Internal Revenue Service, the Employment Security Commission, and any and all other taxing and government authorities.

        c.     Any and all remaining interests, liens, encumbrances, rights and claims asserted against the Property by virtue of valid and enforceable deeds of trust which, upon information and belief, include deeds of trust in favor of Rabo AgriFinance LLC and Crop Production Services, Inc., described in Paragraph 10 above.

        d.     Any and all remaining interests, liens, encumbrances, rights and claims asserted against the property by virtue of valid and enforceable judgments entered against the Debtors or otherwise attaching to the Property.

16. The herein described liens, claims and interests shall attach to the proceeds of sale, subject to the relative priorities and in accordance with the Bankruptcy Code and further orders of this Court.

17. **If any creditor claiming a lien on said Property does not object within the time allowed, they should be deemed to have consented to the sale of said Property free and clear of their liens or interests.**

**WHEREFORE**, the Debtors pray of the Court as follows:

1. That the Court enter an Order approving the sale of the Property, free and clear of the liens, claims, encumbrances, rights, and interests of record to the Buyer, Hill Heirs Properties, LLC, for the purchase price of $480,000.00;

2. That all valid and enforceable liens, claims, and interests in the Property attach to the proceeds of the sale in the same priority as such interests may appear;

3. That the proceeds of sale be subject to the payment of such reasonable, necessary costs and expenses of preserving or disposing of such property to the extent of any benefit to the holder of an allowed secured claim as provided for by Section 506(c), as may be allowed hereafter by the Court;

4. That the Debtors be allowed and authorized to execute such documents and instruments as necessary to effectuate the sale;

5. That the Court order that the Buyer shall not have any responsibility for any liabilities or obligations of the Debtors, whether *in rem* or *in personam*;

6. That the Court permanently enjoin all creditors and claimants of the Debtors and all persons having an interest of any nature derived through the Debtors from pursuing any action against the Buyer or the Property once acquired by the Buyer; and

7. For such other and further relief as to the Court seems just and proper.

*Rest of page blank. Signatures follow.*

Respectfully submitted this the 27th day of April, 2018.

**DAVID F. MILLS, P.A.**

By: */s/ David F. Mills*
David F. Mills
State Bar No: 18326

Patricia L. Mallory
State Bar No. 50851

1559-B Booker Dairy Road
Smithfield, NC 27577
Telephone: (919) 934-7235
Facsimile: (919) 989-1529
david@mills-law.com
patty@mills-law.com
COUNSEL FOR THE DEBTORS



**AGREEMENT FOR PURCHASE AND SALE OF REAL PROPERTY**

REALTOR® North Carolina Association of REALTORS®

THIS AGREEMENT, including any and all addenda attached hereto ("Agreement"), is by and between __HILL HEIRS PROPERTIES, LLC_____,
a(n) _____ ("Buyer"), and
        (individual *or* State of formation and type of entity)
__HOBERT K. SANDERSON, JR. and wife, DENISE C. SANDERSON_____,
a(n) _____ ("Seller").
        (individual *or* State of formation and type of entity)

FOR AND IN CONSIDERATION OF THE MUTUAL PROMISES SET FORTH HEREIN AND OTHER GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH ARE HEREBY ACKNOWLEDGED, THE PARTIES HERETO AGREE AS FOLLOWS:

Section 1. Terms and Definitions: The terms listed below shall have the respective meaning given them as set forth adjacent to each term.

(a) "Property": (Address) __163.69 acres off NCSR 1122_____

Plat Reference: Lot(s)_____, Block or Section _____, as shown on Map Book A Slide _____, __173A_____, __Jones_____ County, consisting of __163.69____ acres.

☐ If this box is checked, "Property" shall mean that property described on Exhibit A attached hereto and incorporated herewith by reference.

(For information purposes: (i) the tax parcel number of the Property is: _____;
and, (ii) some or all of the Property, consisting of approximately _____ acres, is described in Deed Book _____, Page No. _____, _____ County.)

together with all buildings and improvements thereon and all fixtures and appurtenances thereto and all personal property, if any, itemized on **Exhibit A**.

$ __480,000.00_____    (b) "Purchase Price" shall mean the sum of __Four Hundred Eighty Thousand and 00/100_____ Dollars, *payable on the following terms:*

$ __5,000.00_____    (i) "Earnest Money" shall mean __Five Thousand and No/100_____ Dollars or terms as follows: _____

Upon this Agreement becoming a contract in accordance with Section 14, the Earnest Money shall be promptly deposited in escrow with __White & Allen, P.A._____ (name of person/entity with whom deposited), to be applied as part payment of the Purchase Price of the Property at Closing, or disbursed as agreed upon under the provisions of Section 10 herein.

Page 1 of 8

This form jointly approved by:
North Carolina Bar Association
North Carolina Association of REALTORS®, Inc.
Buyer Initials ____  ____   Seller Initials ____  ____

STANDARD FORM 580-T
Revised 7/2013
© 7/2015

White & Allen, P.A. 106 South McLewean St. Kinston, NC 28501                    Phone: (252)527-8000    Fax:                    Untitled
Joseph Bower                              Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

☐ ANY EARNEST MONEY DEPOSITED BY BUYER IN A TRUST ACCOUNT MAY BE PLACED IN AN INTEREST BEARING TRUST ACCOUNT, AND: *(check only ONE box)*

☐ ANY INTEREST EARNED THEREON SHALL BE APPLIED AS PART PAYMENT OF THE PURCHASE PRICE OF THE PROPERTY AT CLOSING, OR DISBURSED AS AGREED UPON UNDER THE PROVISIONS OF SECTION 10 HEREIN. (Buyer's Taxpayer Identification Number is:_____)

☐ ANY INTEREST EARNED THEREON SHALL BELONG TO THE ACCOUNT HOLDER IN CONSIDERATION OF THE EXPENSES INCURRED BY MAINTAINING SUCH ACCOUNT AND RECORDS ASSOCIATED THEREWITH.

$ **0** (ii) <u>Proceeds of a new loan</u> in the amount of _____ Dollars for a term of _____ years, with an amortization period not to exceed _____ years, at an interest rate not to exceed _____ % per annum with mortgage loan discount points not to exceed _____ % of the loan amount, or such other terms as may be set forth on **Exhibit B**. Buyer shall pay all costs associated with any such loan.

$ **0** (iii) <u>Delivery of a promissory note</u> secured by a deed of trust, said promissory note in the amount of _____ Dollars being payable over a term of _____ years, with an amortization period of _____ years, payable in monthly installments of principal, together with accrued interest on the outstanding principal balance at the rate of _____ percent (_____ %) per annum in the amount of $_____ , with the first principal payment beginning on the first day of the month next succeeding the date of Closing, or such other terms as may be set forth on **Exhibit B**. At any time, the promissory note may be prepaid in whole or in part without penalty and without further interest on the amounts prepaid from the date of such prepayment. (NOTE: In the event of Buyer's subsequent default upon a promissory note and deed of trust given hereunder, Seller's remedies may be limited to foreclosure of the Property. If the deed of trust given hereunder is subordinated to senior financing, the material terms of such financing must be set forth on **Exhibit B**. If such senior financing is subsequently foreclosed, the Seller may have no remedy to recover under the note.)

$ **0** (iv) <u>Assumption</u> of that unpaid obligation of Seller secured by a deed of trust on the Property, such obligation having an outstanding principal balance of $ _____ and evidenced by a note bearing interest at the rate of _____ percent (_____ %) per annum, and a current payment amount of $ _____ . The obligations of Buyer under this Agreement are conditioned upon Buyer being able to assume the existing loan described above. If such assumption requires the lender's approval, Buyer agrees to use its best efforts to secure such approval and to advise Seller immediately upon receipt of the lender's decision. Approval must be granted on or before _____ . On or before this date, Buyer has the right to terminate this Agreement for failure to be able to assume the loan described above by delivering to Seller written notice of termination by the above date, *time being of the essence* . If Buyer delivers such notice, this Agreement shall be null and void and Earnest Money shall be refunded to Buyer. If Buyer fails to deliver such notice, then Buyer will be deemed to have waived the loan condition. Unless provided otherwise in Section 3 hereof, Buyer shall pay all fees and costs associated with any such assumption, including any assumption fee charged by the lender. At or before Closing, Seller shall assign to Buyer all interest of Seller in any current reserves or escrows held by the lender, any property management company and/or Seller, including but not limited to any tenant improvement reserves, leasing commission reserves, security deposits and operating or capital reserves for which Seller shall be credited said amounts at Closing.

$ **475,000.00** (v) <u>Cash</u>, balance of Purchase Price, at Closing in the amount of _____
Four Hundred Seventy-Five Thousand and 00/100 _____ Dollars.

Buyer Initials _____ _____   Seller Initials _____ _____   Page 2 of 8

STANDARD FORM 580-T
Revised 7/2013
© 7/2015
Untitled

(c) **"Closing"** shall mean the date and time of recording of the deed. Closing shall occur on or before 30 days from the date the Bankruptcy Judge enters the orders authorizing and confirming the sale of the property.

(d) **"Contract Date"** means the date this Agreement has been fully executed by both Buyer and Seller.

(e) **"Examination Period"** shall mean the period beginning on the first day after the Contract Date and extending through through 11:59pm (based upon time at the locale of the Property) on the date that is 30 days from the Contract Date

*TIME IS OF THE ESSENCE AS TO THE EXAMINATION PERIOD.*

(f) **"Broker(s)"** shall mean:
N/A _____ ("Listing Agency"),
_____ ("Listing Agent" - License # _____ )
Acting as: ☐ Seller's Agent;   ☐ Dual Agent
and _____ ("Selling Agency"),
_____ ("Selling Agent"- License # _____ )
Acting as: ☐ Buyer's Agent;   ☐ Seller's (Sub) Agent;   ☐ Dual Agent

(g) **"Seller's Notice Address"** shall be as follows:
Hobert K. Sanderson, Jr., 1830 Guineatown Road, Kinston, NC 28501

except as same may be changed pursuant to Section 12.

(h) **"Buyer's Notice Address"** shall be as follows:
Hill Heirs Properties, LLC
1373 Davis Mill Road
Deep Run, NC 28525
except as same may be changed pursuant to Section 12.

☒ (i) If this block is marked, additional terms of this Agreement are set forth on Exhibit B attached hereto and incorporated herein by reference. (Note: Under North Carolina law, real estate agents are not permitted to draft conditions or contingencies to this Agreement.)

**Section 2. Sale of Property and Payment of Purchase Price:** Seller agrees to sell and Buyer agrees to buy the Property for the Purchase Price.

**Section 3. Proration of Expenses and Payment of Costs:** Seller and Buyer agree that all property taxes (on a calendar year basis), leases, rents, mortgage payments and utilities or any other assumed liabilities as detailed on attached **Exhibit B**, if any, shall be prorated as of the date of Closing. Seller shall pay for preparation of a deed and all other documents necessary to perform Seller's obligations under this Agreement, excise tax (revenue stamps), any deferred or rollback taxes, and other conveyance fees or taxes required by law, and the following:

Buyer Initials _____   Seller Initials _____   Page 3 of 8

STANDARD FORM 580-T
Revised 7/2013
© 7/2015
Untitled

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Buyer shall pay recording costs, costs of any title search, title insurance, survey, the cost of any inspections or investigations undertaken by Buyer under this Agreement and the following:

_____

Each party shall pay its own attorney's fees.

**Section 4. Deliveries:** Seller agrees to use best efforts to deliver to Buyer as soon as reasonably possible after the Contract Date copies of all information relating to the Property in possession of or available to Seller, including but not limited to: title insurance policies (and copies of any documents referenced therein), surveys, soil test reports, environmental surveys or reports, site plans, civil drawings, building plans, maintenance records and copies of all presently effective warranties or service contracts related to the Property. Seller authorizes (1) any attorney presently or previously representing Seller to release and disclose any title insurance policy in such attorney's file to Buyer and both Buyer's and Seller's agents and attorneys; and (2) the Property's title insurer or its agent to release and disclose all materials in the Property's title insurer's (or title insurer's agent's) file to Buyer and both Buyer's and Seller's agents and attorneys. If Buyer does not consummate the Closing for any reason other than Seller default, then Buyer shall return to Seller all materials delivered by Seller to Buyer pursuant to this Section 4 (or Section 7, if applicable), if any, and shall, upon Seller's request, provide to Seller copies of (subject to the ownership and copyright interests of the preparer thereof) any and all studies, reports, surveys and other information relating directly to the Property prepared by or at the request of Buyer, its employees and agents, and shall deliver to Seller, upon the release of the Earnest Money, copies of all of the foregoing without any warranty or representation by Buyer as to the contents, accuracy or correctness thereof.

**Section 5. Evidence of Title:** Seller agrees to convey fee simple marketable and insurable title to the Property without exception for mechanics' liens, free and clear of all liens, encumbrances and defects of title other than: (a) zoning ordinances affecting the Property, (b) Leases (if applicable) and (c) matters of record existing at the Contract Date that are not objected to by Buyer prior to the end of the Examination Period ("Permitted Exceptions"); provided that Seller shall be required to satisfy, at or prior to Closing, any encumbrances that may be satisfied by the payment of a fixed sum of money, such as deeds of trust, mortgages or statutory liens. Seller shall not enter into or record any instrument that affects the Property (or any personal property listed on **Exhibit A**) after the Contract Date without the prior written consent of Buyer, which consent shall not be unreasonably withheld, conditioned or delayed.

**Section 6. Conditions:** This Agreement and the rights and obligations of the parties under this Agreement are hereby made expressly conditioned upon fulfillment (or waiver by Buyer, whether explicit or implied) of the following conditions:

(a) <u>New Loan:</u> The Buyer must be able to obtain the loan, if any, referenced in Section 1(b)(ii). Buyer must be able to obtain a firm commitment for this loan on or before _____, effective through the date of Closing. Buyer agrees to use its best efforts to secure such commitment and to advise Seller immediately upon receipt of lender's decision. On or before the above date, Buyer has the right to terminate this Agreement for failure to obtain the loan referenced in Section 1(b)(ii) by delivering to Seller written notice of termination by the above date, *time being of the essence*. If Buyer delivers such notice, this Agreement shall be null and void and Earnest Money shall be refunded to Buyer. If Buyer fails to deliver such notice, then Buyer will be deemed to have waived the loan condition. Notwithstanding the foregoing, after the above date, Seller may request in writing from Buyer a copy of the commitment letter. If Buyer fails to provide Seller a copy of the commitment letter within five (5) days of receipt of Seller's request, then Seller may terminate this Agreement by written notice to Buyer at any time thereafter, provided Seller has not then received a copy of the commitment letter, and Buyer shall receive a return of Earnest Money.

(b) <u>Qualification for Financing:</u> If Buyer is to assume any indebtedness in connection with payment of the Purchase Price, Buyer agrees to use its best efforts to qualify for the assumption. Should Buyer fail to qualify, Buyer shall notify Seller in writing immediately upon lender's decision, whereupon this Agreement shall terminate, and Buyer shall receive a return of Earnest Money.

(c) <u>Title Examination:</u> After the Contract Date, Buyer shall, at Buyer's expense, cause a title examination to be made of the Property before the end of the Examination Period. In the event that such title examination shall show that Seller's title is not fee simple marketable and insurable, subject only to Permitted Exceptions, then Buyer shall promptly notify Seller in writing of all such title defects and exceptions, in no case later than the end of the Examination Period, and Seller shall have thirty (30) days to cure said noticed defects. If Seller does not cure the defects or objections within thirty (30) days of notice thereof, then Buyer may terminate this Agreement and receive a return of Earnest Money (notwithstanding that the Examination Period may have expired). If Buyer is to purchase title insurance, the insuring company must be licensed to do business in the state in which the Property is located. Title to the Property must be insurable at regular rates, subject only to standard exceptions and Permitted Exceptions.

(d) <u>Same Condition:</u> If the Property is not in substantially the same condition at Closing as of the date of the offer, reasonable wear and tear excepted, then the Buyer may (i) terminate this Agreement and receive a return of the Earnest Money or (ii) proceed to Closing whereupon Buyer shall be entitled to receive, in addition to the Property, any of the Seller's insurance proceeds payable on account of the damage or destruction applicable to the Property.

Buyer Initials _____  _____   Seller Initials _____  _____   Page 4 of 8

STANDARD FORM 580-T
Revised 7/2013
© 7/2015
Untitled

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

(e) <u>Inspections:</u> Buyer, its agents or representatives, at Buyer's expense and at reasonable times during normal business hours, shall have the right to enter upon the Property for the purpose of inspecting, examining, performing soil boring and other testing, conducting timber cruises, and surveying the Property. Buyer shall conduct all such on-site inspections, examinations, soil boring and other testing, timber cruises and surveying of the Property in a good and workmanlike manner, shall repair any damage to the Property caused by Buyer's entry and on-site inspections and shall conduct same in a manner that does not unreasonably interfere with Seller's or any tenant's use and enjoyment of the Property. In that respect, Buyer shall make reasonable efforts to undertake on-site inspections outside of the hours any tenant's business is open to the public and shall give prior notice to any tenants of any entry onto any tenant's portion of the Property for the purpose of conducting inspections. Upon Seller's request, Buyer shall provide to Seller evidence of general liability insurance. Buyer shall also have a right to review and inspect all contracts or other agreements affecting or related directly to the Property and shall be entitled to review such books and records of Seller that relate directly to the operation and maintenance of the Property, provided, however, that Buyer shall not disclose any information regarding this Property (or any tenant therein) unless required by law and the same shall be regarded as confidential, to any person, except to its attorneys, accountants, lenders and other professional advisors, in which case Buyer shall obtain their agreement to maintain such confidentiality. Buyer assumes all responsibility for the acts of itself, its agents or representatives in exercising its rights under this Section 6(e) and agrees to indemnify and hold Seller harmless from any damages resulting therefrom. This indemnification obligation of Buyer shall survive the Closing or earlier termination of this Agreement. Buyer shall, at Buyer's expense, promptly repair any damage to the Property caused by Buyer's entry and on-site inspections. Except as provided in Section 6(c) above, Buyer shall have from the Contract Date through the end of the Examination Period to perform the above inspections, examinations and testing. **IF BUYER CHOOSES NOT TO PURCHASE THE PROPERTY, FOR ANY REASON OR NO REASON, AND PROVIDES WRITTEN NOTICE TO SELLER THEREOF PRIOR TO THE EXPIRATION OF THE EXAMINATION PERIOD, THEN THIS AGREEMENT SHALL TERMINATE, AND BUYER SHALL RECEIVE A RETURN OF THE EARNEST MONEY.**

Section 7. Leases (Check one of the following, as applicable):

☒ If this box is checked, Seller affirmatively represents and warrants that there are no Leases (as hereinafter defined) affecting the Property.

☐ If this box is checked, Seller discloses that there are one or more leases affecting the Property (oral or written, recorded or not - "Leases") and the following provisions are hereby made a part of this Agreement.

(a) A list of all Leases shall be set forth on Exhibit B;

(b) Seller shall deliver copies of any Leases to Buyer pursuant to Section 4 as if the Leases were listed therein;

(c) Seller represents and warrants that as of the Contract Date there are no current defaults (or any existing situation which, with the passage of time, or the giving of notice, or both, or at the election of either landlord or tenant could constitute a default) either by Seller, as landlord, or by any tenant under any Lease ("Lease Default"). In the event there is any Lease Default as of the Contract Date, Seller agrees to provide Buyer with a detailed description of the situation in accordance with Section 4. Seller agrees not to commit a Lease Default as Landlord after the Contract Date, and agrees further to notify Buyer immediately in the event a Lease Default arises or is claimed, asserted or threatened to be asserted by either Seller or a tenant under the Lease.

(d) In addition to the conditions provided in Section 6 of this Agreement, this Agreement and the rights and obligations of the parties under this Agreement are hereby made expressly conditioned upon the assignment of Seller's interest in any Lease to Buyer in form and content acceptable to Buyer (with tenant's written consent and acknowledgement, if required under the Lease), and Seller agrees to use its best efforts to effect such assignment. Any assignment required under this Section 7 shall be required to be delivered at or before Closing by Seller in addition to those deliveries required under Section 11 of this Agreement.

(e) Seller agrees to deliver an assignment of any Lease at or before Closing, with any security deposits held by Seller under any Leases to be transferred or credited to Buyer at or before Closing. Seller also agrees to execute and deliver (and work diligently to obtain any tenant signatures necessary for same) any estoppel certificates and subordination, nondisturbance and attornment agreements in such form as Buyer may reasonably request.

Section 8. Environmental: Seller represents and warrants that it has no actual knowledge of the presence or disposal, except as in accordance with applicable law, within the buildings or on the Property of hazardous or toxic waste or substances, which are defined as those substances, materials, and wastes, including, but not limited to, those substances, materials and wastes listed in the United States Department of Transportation Hazardous Materials Table (49 CFR Part 172.101) or by the Environmental Protection Agency as hazardous substances (40 CFR Part 302.4) and amendments thereto, or such substances, materials and wastes, which are or become regulated under any applicable local, state or federal law, including, without limitation, any material, waste or substance which is (i) petroleum, (ii) asbestos, (iii) polychlorinated biphenyls, (iv) designated as a Hazardous Substance pursuant to Section 311 of the

Buyer Initials _____  Seller Initials _____  Page 5 of 8

STANDARD FORM 580-T
Revised 7/2013
© 7/2015
Untitled

Clean Water Act of 1977 (33 U.S.C. §1321) or listed pursuant to Section 307 of the Clean Water Act of 1977 (33 U.S.C. §1317), (v) defined as a hazardous waste pursuant to Section 1004 of the Resource Conservation and Recovery Act of 1976 (42 U.S.C. §6903) or (vi) defined as a hazardous substance pursuant to Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. §9601). Seller has no actual knowledge of any contamination of the Property from such substances as may have been disposed of or stored on neighboring tracts.

**Section 9. Risk of Loss/Damage/Repair:** Until Closing, the risk of loss or damage to the Property, except as otherwise provided herein, shall be borne by Seller. Except as to maintaining the Property in its same condition, Seller shall have no responsibility for the repair of the Property, including any improvements, unless the parties hereto agree in writing.

**Section 10. Earnest Money Disbursement:** In the event that any of the conditions hereto are not satisfied, or in the event of a breach of this Agreement by Seller, then the Earnest Money shall be returned to Buyer, but such return shall not affect any other remedies available to Buyer for such breach. In the event this offer is accepted and Buyer breaches this Agreement, then the Earnest Money shall be forfeited, but such forfeiture shall not affect any other remedies available to Seller for such breach. NOTE: In the event of a dispute between Seller and Buyer over the return or forfeiture of Earnest Money held in escrow by a licensed real estate broker, the broker is required by state law to retain said Earnest Money in its trust or escrow account until it has obtained a written release from the parties consenting to its disposition or until disbursement is ordered by a court of competent jurisdiction, or alternatively, the party holding the Earnest Money may deposit the disputed monies with the appropriate clerk of court in accordance with the provisions of N.C.G.S. §93A-12.

**Section 11. Closing:** At or before Closing, Seller shall deliver to Buyer a general warranty deed unless otherwise specified on Exhibit B and other documents customarily executed or delivered by a seller in similar transactions, including without limitation, a bill of sale for any personalty listed on Exhibit A, an owner's affidavit, lien waiver forms (and such other lien related documentation as shall permit the Property to be conveyed free and clear of any claim for mechanics' liens) and a non-foreign status affidavit (pursuant to the Foreign Investment in Real Property Tax Act), and Buyer shall pay to Seller the Purchase Price. At Closing, the Earnest Money shall be applied as part of the Purchase Price. The Closing shall be conducted by Buyer's attorney or handled in such other manner as the parties hereto may mutually agree in writing. Possession shall be delivered at Closing, unless otherwise agreed herein. The Purchase Price and other funds to be disbursed pursuant to this Agreement shall not be disbursed until Closing has taken place.

**Section 12. Notices:** Unless otherwise provided herein, all notices and other communications which may be or are required to be given or made by any party to the other in connection herewith shall be in writing and shall be deemed to have been properly given and received on the date delivered in person or deposited in the United States mail, registered or certified, return receipt requested, to the addresses set out in Section 1(g) as to Seller and in Section 1(h) as to Buyer, or at such other addresses as specified by written notice delivered in accordance herewith.

**Section 13. Entire Agreement:** This Agreement constitutes the sole and entire agreement among the parties hereto and no modification of this Agreement shall be binding unless in writing and signed by all parties hereto. The invalidity of one or more provisions of this Agreement shall not affect the validity of any other provisions hereof and this Agreement shall be construed and enforced as if such invalid provisions were not included.

**Section 14. Enforceability:** This Agreement shall become a contract when signed by both Buyer and Seller and such signing is communicated to both parties; it being expressly agreed that the notice described in Section 12 is not required for effective communication for the purposes of this Section 14. The parties acknowledge and agree that: (i) the initials lines at the bottom of each page of this Agreement are merely evidence of their having reviewed the terms of each page, and (ii) the complete execution of such initials lines shall not be a condition of the effectiveness of this Agreement. This Agreement shall be binding upon and inure to the benefit of the parties, their heirs, successors and assigns and their personal representatives.

**Section 15. Adverse Information and Compliance with Laws:**

(a) **Seller Knowledge:** Seller has no actual knowledge of (i) condemnation(s) affecting or contemplated with respect to the Property; (ii) actions, suits or proceedings pending or threatened against the Property; (iii) changes contemplated in any applicable laws, ordinances or restrictions affecting the Property; or (iv) governmental special assessments, either pending or confirmed, for sidewalk, paving, water, sewer, or other improvements on or adjoining the Property, and no pending or confirmed owners' association special assessments, except as follows (Insert "None" or the identification of any matters relating to (i) through (iv) above, if any):
  None

Buyer Initials _____  Seller Initials _____   Page 6 of 8

STANDARD FORM 580-T
Revised 7/2013
© 7/2015
Untitled

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Note: For purposes of this Agreement, a "confirmed" special assessment is defined as an assessment that has been approved by a governmental agency or an owners' association for the purpose(s) stated, whether or not it is fully payable at time of closing. A "pending" special assessment is defined as an assessment that is under formal consideration by a governing body. Seller shall pay all owners' association assessments and all governmental assessments confirmed as of the date of Closing, if any, and Buyer shall take title subject to all pending assessments disclosed by Seller herein, if any.
Seller represents that the regular owners' association dues, if any, are $ _____ per _____.

(b) **Compliance:** To Seller's actual knowledge, (i) Seller has complied with all applicable laws, ordinances, regulations, statutes, rules and restrictions pertaining to or affecting the Property; (ii) performance of the Agreement will not result in the breach of, constitute any default under or result in the imposition of any lien or encumbrance upon the Property under any agreement or other instrument to which Seller is a party or by which Seller or the Property is bound; and (iii) there are no legal actions, suits or other legal or administrative proceedings pending or threatened against the Property, and Seller is not aware of any facts which might result in any such action, suit or other proceeding.

**Section 16. Survival of Representations and Warranties:** All representations, warranties, covenants and agreements made by the parties hereto shall survive the Closing and delivery of the deed. Seller shall, at or within six (6) months after the Closing, and without further consideration, execute, acknowledge and deliver to Buyer such other documents and instruments, and take such other action as Buyer may reasonably request or as may be necessary to more effectively transfer to Buyer the Property described herein in accordance with this Agreement.

**Section 17. Applicable Law:** This Agreement shall be construed under the laws of the state in which the Property is located. This form has only been approved for use in North Carolina.

**Section 18. Assignment:** This Agreement is freely assignable unless otherwise expressly provided on Exhibit B.

**Section 19. Tax-Deferred Exchange:** In the event Buyer or Seller desires to effect a tax-deferred exchange in connection with the conveyance of the Property, Buyer and Seller agree to cooperate in effecting such exchange; provided, however, that the exchanging party shall be responsible for all additional costs associated with such exchange, and provided further, that a non-exchanging party shall not assume any additional liability with respect to such tax-deferred exchange. Seller and Buyer shall execute such additional documents, at no cost to the non-exchanging party, as shall be required to give effect to this provision.

**Section 20. Memorandum of Contract:** Upon request by either party, the parties hereto shall execute a memorandum of contract in recordable form setting forth such provisions hereof (other than the Purchase Price and other sums due) as either party may wish to incorporate. Such memorandum of contract shall contain a statement that it automatically terminates and the Property is released from any effect thereby as of a specific date to be stated in the memorandum (which specific date shall be no later than the date of Closing). The cost of recording such memorandum of contract shall be borne by the party requesting execution of same.

**Section 21. Authority:** Each signatory to this Agreement represents and warrants that he or she has full authority to sign this Agreement and such instruments as may be necessary to effectuate any transaction contemplated by this Agreement on behalf of the party for whom he or she signs and that his or her signature binds such party.

**Section 22. Brokers:** Except as expressly provided herein, Buyer and Seller agree to indemnify and hold each other harmless from any and all claims of brokers, consultants or real estate agents by, through or under the indemnifying party for fees or commissions arising out of the sale of the Property to Buyer. Buyer and Seller represent and warrant to each other that: (i) except as to the Brokers designated under Section 1(f) of this Agreement, they have not employed nor engaged any brokers, consultants or real estate agents to be involved in this transaction and (ii) that the compensation of the Brokers is established by and shall be governed by separate agreements entered into as amongst the Brokers, the Buyer and/or the Seller.

**Section 23. Attorneys Fees:** If legal proceedings are instituted to enforce any provision of this Agreement, the prevailing party in the proceeding shall be entitled to recover from the non-prevailing party reasonable attorneys fees and court costs incurred in connection with the proceeding.

☐ **EIFS/SYNTHETIC STUCCO:** If the adjacent box is checked, Seller discloses that the Property has been clad previously (either in whole or in part) with an "exterior insulating and finishing system" commonly known as "EIFS" or "synthetic stucco". Seller makes no representations or warranties regarding such system and Buyer is advised to make its own independent determinations with respect to conditions related to or occasioned by the existence of such materials at the Property.

Buyer Initials _____   Seller Initials _____    Page 7 of 8    STANDARD FORM 580-T
Revised 7/2013
© 7/2015
Untitled

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

THE NORTH CAROLINA ASSOCIATION OF REALTORS®, INC. AND THE NORTH CAROLINA BAR ASSOCIATION MAKE NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DO NOT UNDERSTAND THIS FORM OR FEEL THAT IT DOES NOT PROVIDE FOR YOUR LEGAL NEEDS, YOU SHOULD CONSULT A NORTH CAROLINA REAL ESTATE ATTORNEY BEFORE YOU SIGN IT.

**BUYER:**

**Individual**

Date: _____

Date: _____

**Business Entity**

HILL HEIRS PROPERTIES, LLC
(Name of Entity)
By: _Johna Howard Casey_
Name: _Johna Howard Casey_
Title: _member/Manager_
Date: _4-11-2018_

**SELLER:**

**Individual**

_[signature]_
HOBERT K. SANDERSON, JR.
Date: _4-10-2018_

_[signature] Denise C. Sanderson_
DENISE C. SANDERSON
Date: _4-6-18_

**Business Entity**

_____
(Name of Entity)
By: _____
Name: _____
Title: _____
Date: _____

The undersigned hereby acknowledges receipt of the Earnest Money set forth herein and agrees to hold said Earnest Money in accordance with the terms hereof.

_____
(Name of Firm)

Date: _____    By: _____

JSB/ktk #1
117340-00001

Page 8 of 8

STANDARD FORM 580-T
Revised 7/2013
© 7/2015
Untitled

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

## EXHIBIT B

AGREEMENT FOR PURCHASE AND SALE OF REAL PROPERTY by and between HILL HEIRS PROPERTIES, LLC ("Buyer"), and HOBART K. SANDERSON, JR. and wife, DENISE C. SANDERSON ("Seller").

The obligation of Buyer under this Agreement to purchase the property is expressly conditioned upon the issuance of an Order from the Bankruptcy Court of the Eastern District of North Carolina, authorizing the sale by Seller to Buyer upon the terms and conditions set forth in this Agreement, and the issuance of an Order confirming the sale. If orders of the Bankruptcy Court are not issued, then Buyer shall receive a return of the earnest money notwithstanding that the Examination Period has expired.

BUYER:

HILL HEIRS PROPERTIES, LLC

By: _____
       Member/Manager

SELLER:

_____
Hobart K. Sanderson, Jr.

_____
Denise C. Sanderson

JSB/dfj #20
117340-00001

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| HOBERT K. SANDERSON, JR. and ) | |
| DENISE C. SANDERSON ) | Case No. 17-05040-5-JNC |
| Debtors. ) | Chapter 11 |

## NOTICE OF AMENDED MOTION

NOTICE IS HEREBY GIVEN of the AMENDED **MOTION TO SELL PROPERTY FREE AND CLEAR OF LIENS** PURSUANT TO 11 U.S.C. § 363(f) to Hill Heirs Properties, LLC ("Motion"), filed simultaneously herewith in the above captioned case; and

FURTHER NOTICE IS HEREBY GIVEN that this Motion may be allowed provided no response and request for hearing is made by a party in interest in writing to the Clerk of this Court within **TWENTY-ONE (21) DAYS** from the date of this notice; and

FURTHER NOTICE IS HEREBY GIVEN that the property proposed to be sold consists of a certain parcel of real estate located in Jones County, North Carolina, bearing parcel identification number 449695126500, and lying and being situated off State Road 1122, Trenton Township, and comprising 163.69 acres, more or less (154.9 assessed acres), and being more particularly described in that deed recorded at Book 331, Page 550, Jones County Registry; the proposed purchase price is $480,000.00; and

**FURTHER NOTICE IS HEREBY GIVEN that any party or entity who fails to file an objection or response within the time indicated will be deemed to have consented to the proposed sale free and clear of liens, with said liens attaching to the proceeds of the sale; and**

FURTHER NOTICE IS HEREBY GIVEN, that if a response and a request for a hearing is filed by a party in interest in writing within the time indicated, a hearing will be conducted on the motion and response thereto at a date to be determined by the United States Bankruptcy Court for the Eastern District of North Carolina. If no request for a hearing is timely filed, the Court may rule on the Motion and response thereto *ex parte* without further notice. Any party filing an objection requesting a hearing shall appear at said hearing or may be taxed with Court costs.

DATED: April 27, 2018.

                                      DAVID F. MILLS, P.A.

                                      By:   */s/ David F. Mills*
                                              David F. Mills
                                              State Bar No: 18326

                                          1559-B Booker Dairy Road
                                          Smithfield, NC 27577
                                          Telephone: (919) 934-7235
                                          Facsimile: (919) 989-1529
                                          david@mills-law.com
                                          COUNSEL FOR THE DEBTORS