**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

IN RE:

**HOBERT K. SANDERSON, JR.**                    **Case No.: 17-05040-5-JNC**
**DENISE C. SANDERSON**                             **Chapter 11**

           **DEBTORS.**

## CHAPTER 11 PLAN OF REORGANIZATION

**DATED:  MAY 18, 2018**

Pursuant to the provisions of 11 U.S.C. §§ 1121, 1122, and 1123, the Debtors, Hobert K. Sanderson, Jr. and Denise C. Sanderson, hereby submit the following Plan of Reorganization:

## I. SUMMARY OF PLAN

The Debtors' Plan of Reorganization ("Plan") contemplates the continued farming operations of the Debtors; surrender of certain estate assets to creditors holding valid security interests in such assets; and the liquidation of certain assets to pay obligations of the Debtors.

The Debtors' liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court.  The specific amounts and terms of payment will be made according to the treatment of each respective creditor.

All creditors and equity security holders should refer to Articles III and IV of this Plan for information regarding the precise treatment of their claims.  A Disclosure Statement that provides more detailed information regarding this Plan and the rights of creditors has been circulated with this Plan.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  If you do not have an attorney, you may wish to consult one.**

## II. DEFINITIONS

1.       "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended.  References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. §101, *et seq.*

2.       "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

3.       "CLAIM" shall mean a duly listed or a timely filed claim which is allowed in

order to be paid by the Court.

4.      "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article IV of the Plan.

5.      "CONFIRMATION DATE" shall mean the date of entry by the Court of a Confirmation Order at or after a hearing pursuant to 11 U.S.C. § 1129.

6.      "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. § 1129.

7.      "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

8.      "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

9.      "CREDITORS" shall mean all creditors of the Debtor holding claims for debts, liabilities, demands or claims of any character whatsoever.

10.     "DEBTOR(S)" or "Debtor(s) in Possession" shall mean Hobert K. Sanderson, Jr., and Denise C. Sanderson.

11.     "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with §1125, to be distributed to the holders of claims whose votes with respect to this Plan are to be solicited.

12.     "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

13.     "EFFECTIVE DATE" shall be fourteen (14) days after the Confirmation Order becomes final and non-appealable.

14.     "FINAL DECREE" shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

15.     "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a priority unsecured claim or secured claim.

16.     "PETITION DATE" shall mean the date upon which the Debtors filed the voluntary Chapter 11 petition, to wit, October 13, 2017.

2

17.    "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

18.    "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under §507.

19.    "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrances which have been properly perfected as required by law with respect to property owned by the Debtors, to the extent of the value of the collateral.

20.    "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to §507(a)(8).

21.    "INTEGRATOR" shall mean Case Farms, LLC, its successors and assigns, or any other integrated poultry producer for whom the Debtors produce live poultry under contract.

22.    "FLOCK PROCEEDS" shall mean compensation paid by the Integrator to or for the benefit of the Debtors as consideration for the production of poultry pursuant to the Production Agreement.

23.    "SETTLEMENT" shall mean the process of determining the amount of Flock Proceeds payable by the Integrator for the production of each individual flock under the Case Contract and shall also refer to the amount of Flock Proceeds so payable from each flock.

24.    "PRODUCTION AGREEMENT" shall mean the poultry production contract between Integrator and the Debtors under which the Debtors operate their poultry farm and shall include any subsequent continuation, renewal, or modification of the Production Agreement or any replacement poultry production agreement.

## III. TREATMENT OF ADMINISTRATIVE AND PRIORITY TAX CLAIMS

a.    **Administrative Claims**.  This class consists of claims for any cost or expense of administration allowed by the Court pursuant to §§ 503, 506, and 507 of the Code.  The following administrative claims will be paid subject to Court approval:

| Claimant | Title | Amount |
|---|---|---|
| David F. Mills, P.A. | Counsel for Debtors | TBD |
| Mike Gurkins | Auctioneer | TBD |
| RDD Auction | Personal Prop. Appraiser | TBD |

Administrative Claims in this class shall be paid in cash and in full within ten (10) days of the Effective Date of the Plan. Administrative Claims approved after the Effective Date shall be paid in cash and in full within thirty (30) days of entry of an Order allowing the same, or as agreed between the Debtor and the holder of such allowed Administrative Claim.  The Debtor and the holder of an allowed Administrative Claim can agree on such terms and consideration as they may determine including, but not limited to, securing such Administrative Claim by a lien

upon adequate collateral and property and the execution of any instruments evidencing the same. Administrative Claims remaining unpaid following the date that is ten (10) days after the Effective Date or thirty (30) days following allowance of such claim shall accrue interest at a rate of not less than six percent (6%) per annum.

EXCEPT FOR COURT APPROVED PROFESSIONALS, ALL OTHER ADMINISTRATIVE CLAIMS AGAINST THE ESTATE MUST BE FILED WITHIN SIXTY (60) DAYS OF THE CONFIRMATION DATE.

**b.** **Priority Tax Claims**. The Debtors propose to pay these claims in full in annual installments over a period not exceeding five years from the date of the Order for Relief. Annual payments shall commence on March 1, 2019, and shall include interest at the rate set by Internal Revenue Code Sections 6601 and 6621. The Debtor may elect to pay these claims in full and in cash at any time following the Effective Date. Notwithstanding the foregoing, the holder of an allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the allowed Priority Tax Claim. Any Claim or demand for any such penalty will be subject to treatment as a General Unsecured Claim to the extent allowed.

In accordance with § 1123(a)(1), Administrative Claims under § 507(a)(2) and Priority Tax Claims under § 507(a)(8) have not been classified.

The following priority tax claims are known to exist:

Internal Revenue Service:                    $41,959.61
North Carolina Department of Revenue:        $29,676.91

## IV. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

For the purposes of this Plan, Claims against the Debtors are classified as follows in accordance with § 1122(a):

### CLASS 1 – Priority Non-Tax Claims.

The holders of allowed claims in Class 1 shall receive all amounts to which such holder is entitled on account of such allowed Claim (a) on the later of (i) the Effective Date or (ii) the date when such allowed Claim becomes due and payable according to its terms and conditions; or (b) at such other time as may be agreed upon by the Debtors and the holder. The Debtors are not aware of any claims in this Class.

### CLASS 2 – *Ad Valorem* Tax Claims.

(1) Classification. Class 2 consists of claims for taxes owed by the Debtors to any city, county, or other municipality or taxing entity entitled to tax the Debtors' property based upon the value of the property. The Jones County Tax Collector has filed a claim (Claim 33) in the amount of $14,049.00 for 2016 and 2017 *ad valorem* taxes.

4

(2) <u>Impairment</u>. This class will be impaired.

(3) <u>Treatment</u>. To the extent any portion of the claims in this class remain outstanding on the Effective Date, the Debtors will pay such claims in full through quarterly payments over a period of five (5) years from the order for relief. Quarterly payments shall commence on the earlier of January 15, April 15, July 15, or October 15 following the Effective Date and shall continue quarterly thereafter, and include interest at the applicable rate imposed by the taxing authority under applicable law.  Also, creditors in this Class shall receive distributions from the proceeds of the liquidation of any property on which such taxes are assessed.

## CLASS 3 – RABO AGRIFINANCE, LLC ("Rabo")

(1)     <u>Description</u>.  The Claims of Rabo arise from an Amended and Restated Credit Agreement dated as of May 15, 2013, by and between the Debtors, Sanderson & Son Farming, Hobert Sanderson, Sr., Margaret Sanderson, and Rabo. The Credit Agreement was amended on or about October 10, 2013, June 11, 2014, June 29, 2015, and June 13, 2016.  Pursuant to this Credit Agreement, as amended, three separate loans were made:

      a.     Real Estate Term Note ("Term Note 1"). Term Note 1, in the original principal amount of $1,400,000.00, accrued interest at the rate of LIBOR plus 3.00%.

      b.     Second Real Estate Term Loan Note ("Term Note 2").  Term Note 2, in the original principal amount of $312,000.00, accrued interest at the rate of 4.99%.

      c.     Crop Production Line of Credit ("CPLOC"). The CPLOC, in the original maximum amount of $1,350,000.00, accrued interest at the rate of LIBOR plus 2.9%.

The Petition Date balance under each of these loans is as follows:

      Term Note 1: $739,450.98
      Term Note 2: $503,692.09
      CPLOC: $1,728,652.79

      Total:  $2,971,795.86

The claim in this Class is secured as follows:

- Deed of Trust, Assignment of Rents, and Security Agreement dated as of April 18, 2012, recorded at Book 356, page 331, Jones County Registry, covering the real estate described therein.  In addition, the Deed of Trust contains a security agreement covering crops, bushes, trees, plants, and all poultry, broiler, or turkey growing contacts and agreements, service contracts and other agreements and all other tangible personal property including goods, materials, supplies, machinery and equipment, as well as accounts, inventory, farm products, general intangibles and all proceeds of any crop insurance and governmental price support programs.

- Deed of Trust, Assignment of Rents and Security Agreement dated as of May 15, 2013, recorded at Book 363, Page 465, Jones County Registry, covering the real estate described therein.

- Assignment of the prepetition proceeds of the Case Contract.

The real estate upon which Rabo appears to have a first position security interest (subject to statutory tax liens, if any) is described as follows:

1.     Parcel 444963471600, comprising 141.5 acres, more or less, in Jones County, North Carolina, and including a poultry production facility, more particularly described in Book 261, Page 998, Jones County Registry ("Rabo Parcel 1").

2.     Parcel 445916577400, comprising 23.2 acres, more or less, in Jones County, North Carolina, more particularly described in Book 228, Page 519, Jones County Registry ("Rabo Parcel 2").

3.     Parcel 445916837900, comprising 43.53 acres, more or less, in Jones County, North Carolina, more particularly described in Book 220, Page 569, Jones County Registry ("Rabo Parcel 3").

4.     Parcel 446955423000, comprising 254.31 acres, more or less, in Jones County, North Carolina, more particularly described in Book 355, Page 156, Jones County Registry ("Rabo Parcel 4").

5.     Parcel 449695126500, comprising 154.9 acres, more or less, in Jones County, North Carolina, more particularly described in Book 331, Page 550, Jones County Registry ("Rabo Parcel 5").

6.     Parcel 444937841800, comprising 41.72 acres, more or less, in Jones County, North Carolina, more particularly described in Book 219, Page 833, Jones County Registry, subject to a life estate in favor of Hobert K. Sanderson, Sr., and wife, Margaret Sanderson ("Rabo Parcel 6").

In addition, Rabo's claim includes the Wyse Fork Credit Agreement, which is described and treated separately under Class 10, in the Petition Date amount of $1,779,608.56.  The total amount of Rabo's claim (as set forth in Rabo's Claim 26 of the Claims Registry) is:

|  | $2,971,795.86 (Class 3) |
|---|---|
|  | $1,779,608.56 (Class 10) |
| Total Rabo Claim: | $4,751,404.42 |

(2)     Impairment.    This Class is impaired.

(3)     Treatment.

The Rabo Claim shall be treated as a partially Secured Claim in the amount of $2,790,492.00 (subject to adjustment based on the results of the pending equipment appraisal) less any postpetition payments made by or for the benefit of the Debtors including, but not limited to, the proceeds of any postpetition collateral liquidation, but not including adequate protection payments. Rabo shall retain its security interests, encumbrances, and liens with the characteristics, nature, extent, and priorities thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(1) until the allowed Secured Claim is paid in full as provided herein, except as described in § 552.

The Debtors will market for private sale Rabo Parcel 4 and Rabo Parcel 5, upon which Rabo has a first position security interest.[1] If the Debtors do not have a signed and enforceable contract to sell one or both of these parcels within ten (10) months of the Confirmation Date, the Debtors shall promptly thereafter retain a real estate auctioneer to liquidate the parcels by public auction. The liens against the parcels will transfer to the proceeds of the sale which, after deduction for approved, reasonable and necessary costs and expenses of sale, will be paid to the lienholders as their interests appear of record.

In addition, the Debtors have employed Country Boys Auction & Realty, Inc., to conduct a public auction of certain farm equipment [D.E. 256], and the Debtors have filed a motion to approve such sale free and clear of liens [D.E. 240]. The sale is scheduled for May 31, 2018. The farm equipment to be sold is listed as follows:

> JD 9965 cotton picker
> 1993 International bus vin # 1HVBAZRL3PH534879
> 1985 Ford fire truck vin # 1FDYD80U1EVA15123
> 1985 Fruehauf van vin # 1H2V04823FE027361
> 2008 Shellborne 32' stripper
> 2012 KBH boll buggy
> 2010 KBH module builder
> 1998 Taylor module builder SN 9539A
> 1998 Taylor module builder SN 9551

The liens against this equipment will transfer to the proceeds of the sale, which, after deduction for approved, reasonable and necessary costs and expenses of sale, will be paid to the lienholders as their interests appear of record. It appears to the Debtors based on a review of the public record that Rabo has the first priority lien on these items.

Term Note 1, Term Note 2, and the CPLOC will be consolidated for treatment as a single claim herein and the balance as of the Effective Date will be amortized over a period of twenty-five (25) years from the Effective Date, with interest at the fixed rate of 4.99% per annum, payable in annual installments of principal and interest beginning February 15, 2019, and continuing annually thereafter with a final payment of the outstanding principal and accrued interest due on the fifteenth (15th) annual due date (February 15, 2033). The claim will be reamortized to account for any postpetition payments or liquidation proceeds received by Rabo

---

[1] With respect to Rabo Parcel 5, a Motion to Approve Private Sale for a proposed purchase price of $480,000.00 is pending [D.E. 225].

prior to February 15, 2019.  *For feasibility purposes, the amount of the annual payment is estimated to be $140,000.*

The Debtors will direct Integrator to redirect to Rabo a sum equal to thirty-five percent (35%) of each Flock Settlement arising from the Case Contract, beginning with the first Flock Settlement after the Effective Date, for application against the next annual payment to Rabo. This provision does not create an assignment and Rabo does not acquire any right, title, or interest in the Flock Proceeds, except to the extent allowed as adequate protection by prior Orders of this Court.  In the event that Integrator fails or refuses to send this allocation to Rabo, it shall be the Debtors' responsibility to pay Rabo not less than 35% of each Flock Settlement for application against the next annual payment due Rabo.

The undersecured portion of the Rabo Claim (not including that portion of the Rabo Claim treated separately under Class 11) shall be treated as a General Unsecured Claim under Class 12.

## CLASS 4 – CROP PRODUCTION SERVICES, INC. ("CPS")

(1)    <u>Description</u>.

a.    On or about September 28, 2015, the Debtors and CPS entered into a promissory note in the original principal amount of $349,549.53, with interest accruing at the rate of 12% per annum (the "First CPS Note").  To secure the First CPS Note, the Debtors executed a Security Agreement ("First CPS Security Agreement").

b.    On or about September 28, 2015, the Debtors and CPS entered into a promissory note in the original principal amount of $669,243.00, with interest accruing at the rate of 12% per annum (the "Second CPS Note"). To secure the Second CPS Note, the Debtors executed a Security Agreement ("Second CPS Security Agreement").

The First and Second CPS Security Agreements gave CPS a security interest in the following property:

- All of the Debtors' farm equipment, including but not limited to, tractors, trucks, combines, disks, harvesters, planters, plows, tillers, tractor trailers, sprayers, transplanters, irrigation equipment, and all other attachments thereto, together with grain bins, grain augers, conveying equipment, bulk tobacco barns and other farm implements of every kind and nature, together with additions and accessories to, and all substitutions and replacements for, the foregoing collateral; and all proceeds of the foregoing collateral in whatever form, cash or noncash.

- All assets of the Debtors including but not limited to the following property, wherever located:  All goods, equipment, machinery, supplies, furniture, furnishings, fixtures and all renewals and replacements of, all substitutions for and additions, modifications, improvements, accumulations and accessories to, and all tools, fittings, and parts therefore, and all after acquired like and similar properties; and all inventory, product; and all accounts and

receivables, and the right to receive all sums due or to become due under said accounts and receivables; and all products and proceeds of all the foregoing, including insurance proceeds.

CPS perfected its security interest by filing a UCC Financing Statement with the North Carolina Secretary of State on September 29, 2015.

The obligations evidenced by the First CPS Note and Second CPS Note are further secured by liens on certain real property of the bankruptcy estate located in Jones County, North Carolina, as described in (i) the Deed of Trust recorded at Book 380, Page 31, Jones County Registry, and (ii) the Deed of Trust recorded at Book 380, Page 14, Jones County Registry, to which reference is made for a more particular description of the collateral.

The real estate upon which CPS appears to have a first position security interest (subject to statutory tax liens, if any) is described as follows:

1.      Parcel 444928810200, being the Debtors' residence and comprising 1.02 acres, more or less, in Jones County, North Carolina, more particularly described in Book 194, Page 911, Jones County Registry ("CPS Residential Parcel").

2.      Parcel 447937532100, comprising 45.6 acres, more or less, in Jones County, North Carolina, more particularly described in Book 355, Page 319, Jones County Registry ("CPS Non-Residential Parcel 1").

3.      Parcel 454041285800, comprising 5.63 acres, more or less, in Jones County, North Carolina, more particularly described in Book 317, Page 292, Jones County Registry ("CPS Non-Residential Parcel 2").

In addition, CPS appears to hold a second position security interest in Rabo Parcels 1-6.

The Petition Date balance of the CPS notes is as follows:

> First CPS Note:  $330,970.29.
> Second CPS Note:  $833,605.11.
> Total:  $1,164,575.40.

(2)      Impairment.    This Class will be impaired.

(3)      Treatment.      The First CPS Note and the Second CPS Note shall be combined and treated herein as a single note.

On or before the Effective Date, the Debtors shall surrender, deed, quitclaim, or otherwise transfer, at CPS's option, CPS Non-Residential Parcel 1 and CPS Non-Residential Parcel 2.  Upon Confirmation, the automatic stay shall be terminated with respect to CPS Non-Residential Parcel 1 and CPS Non-Residential Parcel 2.

As to Rabo Parcels 1-6, no equity remains over and above Rabo's interests to secure the

claim of CPS.

The value of the farm equipment is such that there is no equity over and above the claims of Rabo to secure the claim of CPS.[2]

The only remaining collateral with value for the benefit of CPS is the CPS Residential Parcel with an appraised value of $164,000.00.

The CPS Claim in this class shall be treated as a Secured Claim in the amount of $164,000.00, and shall remain secured with the same security interests, encumbrances, and liens with the characteristics, nature, extent, and priorities thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(1) until the Secured Claim is paid in full as provided herein.

The CPS Claim will be amortized over a period of twenty-five (25) years from the Effective Date, with interest at the fixed rate of 5.0% per annum, and payable in monthly installments of $938.75 beginning on the 15th day of the first full month following the Effective Date, and continuing monthly thereafter until the fifteenth (15th) anniversary of the first monthly installment hereunder, at which time the remaining balance of the claim will be due and payable.

The undersecured portion of the CPS Claim shall be treated as a General Unsecured Claim under Class 12.

### CLASS 5 – ALLY BANK ("Ally").

(1)     Classification.  The Debtors executed an Installment Sales Contract with Ally in the original principal amount of $41,735.07, payable in 71 installments of $579.65 and 1 installment of $579.92, with zero percent (0.0%) interest.  The outstanding balance as of the Petition Date was $13,356.22.  As security, Debtors granted Ally a security interest perfected by notation on title on a 2012 GMC Yukon, VIN 1GKS2CE00CR270959.

(2)     Impairment.    This class will be impaired.

(3)     Treatment.      Ally shall retain its lien pursuant to § 1129(b)(2)(A)(i)(1) until the secured claim is paid in full.  The claim will be treated as fully secured and decelerated and treated as a current, nondefault loan.  The Debtors will resume contractual monthly payments on the first contractual due date first occurring following the Effective Date.  Payments will continue until paid in full.

### CLASS 6 – WELLS  FARGO BANK ("Wells Fargo")

(1)     Classification.  The female Debtor executed an installment sales contract with Wells Fargo (Claim 24) in the original principal amount of $32,936.21, payable in 60 installments of $502.83 with interest accruing at 4.25% per annum.  The outstanding balance as of the Petition Date was $10,743.00.  As security, the female Debtor granted Wells Fargo a security interest perfected by notation on title on a 2013 Jeep Grand Cherokee, VIN

---

[2]  An appraisal of the farm equipment is pending.  This provision will be revised if necessary.

1C4RJEBG8DC642675.

(2)     Impairment.    This class will be impaired.

(3)     Treatment.     Wells Fargo shall retain its lien pursuant to § 1129(b)(2)(A)(i)(1) until the secured claim is paid in full.  The claim will be decelerated and treated as a current, nondefault loan.  The claim shall be treated as a fully secured claim in an amount equal to (1) the outstanding principal and interest due as of the Petition Date, plus (2) interest accruing from the Petition Date through the Effective Date at the contract rate of 4.25%, and (3) attorney's fees, expenses, costs, and charges approved by the Court pursuant to § 503 and 506 upon proper application and opportunity to be heard, if any, less (4) any postpetition payments including, but not limited to, adequate protection payments.

This claim will be reamortized over a period of thirty-six (36) months from the Effective Date, with interest at the fixed rate of 4.25% per annum, and payable in monthly installments *(estimated for purposes of feasibility to be $318.37)* beginning on the fifteenth (15th) day of the first full month following the Effective Date, and continuing monthly thereafter until paid in full.

### CLASS 7—WELLS FARGO BANK ("Wells Fargo")

(1)     Classification.  The male Debtor executed an Installment Sales Contract with Wells Fargo in the original principal amount of $45,797.34, payable in 63 installments of $605.90, with interest accruing at 6.99% per annum.  The outstanding balance as of the Petition Date was $20,937.91.  As security, the male Debtor granted Wells Fargo a security interest perfected by notation on title on a 2013 GMC Sierra, VIN 1GTR2WE71DZ344576.

(2)     Impairment.    This class will be impaired.

(3)     Treatment.     Wells Fargo shall retain its lien pursuant to § 1129(b)(2)(A)(i)(1) until the secured claim is paid in full.  The claim will be decelerated and treated as a current, nondefault loan.  The claim shall be treated as a fully secured claim in an amount equal to (1) the outstanding principal and interest due as of the Petition Date, plus (2) interest accruing from the Petition Date through the Effective Date at the contract rate of 6.99%, and (3) attorney's fees, expenses, costs, and charges approved by the Court pursuant to § 503 and 506 upon proper application and opportunity to be heard, if any, less (4) any postpetition payments including, but not limited to, adequate protection payments.

This claim will be reamortized over a period of forty-eight (48) months from the Effective Date, with interest at the fixed rate of 4.25% per annum, and payable in monthly installments *(estimated for purposes of feasibility to be $475.10)* beginning on the fifteenth (15th) day of the first full month following the Effective Date, and continuing monthly thereafter until paid in full.

### CLASS 8 – CLAIM OF ERIC J. PIERCE.

(1)     Classificiation.  This class consists of the claim of Eric J. Pierce, who filed a

11

secured claim in the amount of $179,249.56 (Claim 32).  Pierce contends that his claim is secured by a first position deed of trust recorded at Book 378, Page 629, Jones County Registry, against certain real estate described as 45.6 acres, more or less, being the David Green Property situated off State Road 1300, Kinston, Jones County, North Carolina.  Upon information and belief, CPS contends that it has a first position lien on this property.

      (2)    <u>Impairment</u>.  This class will be impaired.

      (3)    <u>Treatment</u>.  This property will be surrendered.  Any deficiency, if properly claimed and allowed, shall be treated as a General Unsecured Claim under Class 12.

### CLASS 9 – UNSECURED JUDGMENT CLAIMS:

      (1)    <u>Classification</u>.  This class comprises those claimants holding judgments against one or both of the Debtors.  The claims in this class are being treated as unsecured for one or more of the following reasons:  (a) all of the Debtors' real estate is held as tenancies by the entirety; as to those judgments against only one of the Debtors, such judgments have not attached to property and are unsecured; (b) the claim of M2 Lease Funds, LLC, was not domesticated to North Carolina and therefore does not attach to any property; (c) the judgment in favor of Susquehanna Commercial Finance, Inc., is avoidable as a preference pursuant to § 547; or (d) as a result of senior valid and enforceable consensual liens against all the Debtors' real estate, there is no value to secure these judgments, and they are to be treated as General Unsecured Claims pursuant to § 506(a) and the judgment liens void pursuant to § 506(d).

Based upon the Debtor's investigation, it appears that members of this class include, but are not limited to, the following claimants:

*BB&T Financial FSB vs. Hobert K. Sanderson, Jr.*  Jones County file no. 17 CVD 254.

*Monsanto, Inc. vs. Hobert K. Sanderson, Jr., Denise C. Sanderson, et al;* Wake County file no. 16 CVS 12486; Jones County file no. 17 T 5.

*Bennie Eatmon vs. Hobert K. Sanderson, Jr.*  Jones County file no. 17 CVM 6.

*M2 Lease Funds, LLC, vs. Hobert K. Sanderson, Jr., Denise C. Sanderson, et al.;* Waukesha County, Wisconsin, Circuit Court file no. 17 CV 1034, entered August 4, 2017. Judgment was not domesticated to North Carolina.

*Joshan Enterprises, LLC vs. Hobert K. Sanderson, Jr., Denise C. Sanderson, et al;* Lenoir County file no. 16 CVS 789, Jones County file no. 16 T 14, docketed 9/19/2016.

*Susquehanna Commercial Finance, Inc. vs. Hobert K. Sanderson, Jr., Denise C. Sanderson, et al.*; Jones County District Court, 17 CVS 94; entered September 25, 2017.

      (2)    <u>Impairment</u>.  This class will be impaired.

(3)    Treatment.    Holders of claims in this Class are deemed unsecured and will be treated as General Unsecured Claims in Class 12.  Upon Confirmation, members of this Class will cancel their judgments of record.

## CLASS 10 – DELAGE LANDEN FINANCIAL SERVICES, INC. ("DLL")

1.    Classification.  DLL obtained a judgment against the Debtors as follows:  *Delage Landen Financial Services, Inc., vs. Hobert K. Sanderson, Jr., Denise C. Sanderson, et al;* Wake County file no. 16 CVD 10575; Jones County file no. 17 T 1, docketed 1/5/2017.  DLL contends, and the Debtors deny, that this claim is nondischargeable pursuant to § 523(a)(2).

2.    Impairment.  This class will be impaired.

3.    Treatment.    DLL and Debtors have agreed that DLL shall have a nondischargeable claim against the male Debtor, Hobert K. Sanderson, Jr., only, in the amount of $90,000.00.  This agreement and DLL's nondischargeable claim will be documented and memorialized by a separate Consent Order which will be submitted for the Court's approval.

This claim will be treated as unsecured and, except as expressly provided herein, will be treated as a General Unsecured Claim in Class 12.

## CLASS 11 – RABO/WYSE FORK UNSECURED CLAIM.

(1)    Classification.  On or about October 10, 2013, Rabo entered into a Credit Agreement with Wyse Fork Broiler Farm, LLC, the Debtors, Timothy Bryan Sanderson, Frankie Antwine Sanderson, Michael Scott Sanderson and Misty Sanderson (the "Wyse Fork Credit Agreement").  The Wyse Fork Credit Agreement was amended on or about November 21, 2013. The Petition Date balance of the claim was $1,779,608.56.

The Wyse Fork Credit Agreement purports to be secured by liens against non-estate real property owned by Wyse Fork Broiler Farm, LLC, and certain parcels of real estate owned by the Debtors (being previously described as Rabo Parcel 1 and Rabo Parcel 6).

(2)    Impairment.  This class will be impaired.

(3)    Treatment.  Wyse Fork Broiler Farm, LLC, is a debtor in that Chapter 12 bankruptcy case pending before this Court at Case No. 18-00380-5-JNC (the "Wyse Fork Case").  This claim is being treated as fully secured under the Plan submitted in the Wyse Fork Case, which has a confirmation hearing scheduled for June 7, 2018.

As to the Debtors, this Class is unsecured, and Rabo shall receive nothing under this Plan since it is being treated as fully secured in the Wyse Fork Case.

## CLASS 12 – GENERAL UNSECURED CREDITORS.

(1)    Classification.  This class consists of all allowed unsecured claims, the

13

undersecured portion of any partially secured claims, and claims deemed a part of this class by the provisions of this Plan.

(2)     Impairment.  This class will be impaired.

(3)     Treatment.  Consistent with the Liquidation Analysis attached as Exhibit C to the Disclosure Statement, the Debtors will pay the members of this Class the sum of $49,365.00 with interest at the rate of 3.0% APR in equal annual installments over a period of ten (10) years commencing on March 1, 2019, and continuing annually thereafter.  On March 1, 2023, all payments due this class shall be due and payable in full.  All such payments shall be distributed *pro rata* to allowed claims within this Class.  *For purposes of feasibility, the Debtors estimate the annual payment to this Class to be $5,787.08.*

## V.  MEANS OF EXECUTION

1.     The Debtors will further execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of this Plan and the Bankruptcy Code.

2.     The Debtors shall take such other action as is necessary to satisfy the other terms and requirements of this Plan and the Bankruptcy Code.

3.     All funds necessary for the implementation of this Plan shall be obtained from: (1) the Debtors' farm income; (2) proceeds of the liquidation of assets; (3) income, if any, derived from Wyse Fork Broiler Farm, LLC; and (4) federal crop insurance and government farm program payments.  The Debtors shall pay such portion of their earnings from personal services performed by the Debtors after the commencement of the case or other future income of the Debtors as is necessary for the execution of the Plan.

4.     Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code.  No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.  **Post-petition/pre-confirmation interest shall accrue at the lower of the interest rate provided for by this Plan or the contractual non-default interest rate.**

5.     All payments, distributions, or transfers to be made under the Plan, except as expressly provided by the Plan or the Court, shall be made without interest.

6.     **All objections to claims, fee applications and adversary proceedings will be filed with the Court within ninety (90) days of the Effective Date.**

7.     Default.  In the event of a default, the Debtors shall have thirty (30) days to cure, after written notice of such default has been sent to the Debtors.  In the event the Debtors fail to timely cure, the affected creditor shall have the right to pursue its rights in accordance with applicable state law.  If no Final Decree has been entered, the creditor must also send the notice to cure to Debtors' counsel.

8.    <u>Unclaimed Property</u>.  If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim or interest and the Debtors or other disbursing agent shall not attempt to make any further distribution to such holder of the claim.  Unclaimed property shall be redistributed to other creditors pro rata in accordance with the Plan.

## VI.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtors specifically **assume** the following prepetition contracts and/or leases:

(a)    The Operating Agreement of SIRS of NC, LLC.
(b)    The Operating Agreement of Wyse Fork Broiler Farm, LLC.
(c)    The Shareholder Agreement and related agreements associated with the male Debtor's ownership of shares in Jones County Cotton Gin, Inc.
(d)    The Production Agreement with Case Farms, LLC.

The Debtor assumes all leases of farmland.

Except as specified herein, all pre-petition contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically **rejected;** provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtor and any secured creditor.

## VII. ACCEPTANCE OR REJECTION OF PLAN:
## EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.    <u>Each Impaired Class Entitled to Vote Separately</u>.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B.    <u>Claimants Entitled to Vote</u>.  Holders of impaired claims shall be entitled to vote if:

(1)    Such claim has been filed against the Debtors in a liquidated amount or has been listed on the Debtors' schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtors' schedules;

(2)    Such claim has been filed against the Debtors or listed on the Debtors' schedules and is the subject of an existing objection filed by the Debtors, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018; or

(3)     Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtors and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

C.     Confirmation Hearing.  The Court will schedule a Confirmation Hearing to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

D.     Acceptances Necessary to Confirm the Plan.  At the Confirmation Hearing, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class.  Consistent with §1126(c), and except as provided in §1126(e), a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtors were liquidated as of the Effective Date under Chapter 7 of the Bankruptcy Code.

E.     Confirmation of Plan Without Necessary Acceptances.  The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired classes.  In order to be confirmed without the acceptance of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class.  **In the event that any class votes against the Plan, the Debtors hereby request and move the Court under the provisions of this Plan outlined in Section VIII herein for confirmation pursuant to the "cramdown" provisions of §1129(b) of the Bankruptcy Code.**  In connection therewith, the Debtors shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with §1129(b)(2)(A).

## VIII. "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

With respect to any class of creditors impaired but not accepting the Plan by the requisite majority, the Debtors request the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that is impaired under the Plan and that the Court confirm the Plan without such acceptances by said impaired classes.  The Debtors will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtors and any Secured Creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the

Plan.

## IX.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of §§ 105(a) and 1127 of the Code and for, without limitation, the following purposes, *inter alia*:

1.      To determine any and all objections to the allowance of claims and/or interests;

2.      To determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

3.      To determine any and all applications pending on the Confirmation Date for the rejection or assumption or assignment of executory contracts or unexpired leases and the allowance of any claim resulting therefrom;

4.      To determine all controversies and disputes arising under or in connection with the Plan;

5.      To determine all applications, adversary proceedings and contested matters pending on the Confirmation Date;

6.      To effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the estate;

7.      To determine such other matters and for such other purposes as may be provided for in the Confirmation Order;

8.      To determine all disputes regarding property of the estate;

9.      To establish and adjust procedures for the orderly administration of the estate;

10.     To determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

11.     To replace the Debtors-in-Possession with a Trustee for good cause shown.

## X.  MISCELLANEOUS PROVISIONS

1.      <u>Survival of Terms</u>.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

2.      <u>Controlling Law</u>.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the Bankruptcy Code and the Bankruptcy Rules.  The laws of the State of North Carolina govern this Plan and any agreements, documents,

and instruments executed in connection with this Plan, to the extent consistent with the Bankruptcy Code and Bankruptcy Rules.

       3.    <u>Further Assurance</u>.  If at any time the Debtors shall consider or be advised that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

       4.    <u>Revocation of Plan</u>.  The Debtors have reserved the right to revoke and withdraw this Plan before the entry of the Confirmation Order.  If the Debtors revoke or withdraw this Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtors, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, as the case may be, or any other person or to prejudice in any manner the rights of such Debtors, as the case may be, or person in any further proceedings involving such Debtors.

       5.    <u>Exemption from Transfer Taxes</u>.  Pursuant to § 1146(a) of the Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

       6.    <u>Modification and Cancellation</u>.  The treatment of claims stated herein may, by modification, Court Order, or other legally appropriate manner, be modified throughout the course of payment under this Plan.  The Debtors, upon full payment as called for under the terms of the Plan, shall be entitled to have the notes marked paid and satisfied and any deeds of trust or other evidence of liens canceled as a matter of record.

       7.    <u>Delivery of Distributions in General</u>.  Distributions to holders of allowed claims shall be made: (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtors after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

## XI.  EFFECT OF CONFIRMATION

       1.    <u>Vesting</u>.  Except as provided herein, confirmation of the Plan vests all property of the estate in the reorganized Debtors.

       2.    <u>Retention of Properties</u>. Except as provided by this Plan, the reorganized Debtors shall retain all property both real and personal, and tangible and intangible, subject to such future use or disposition as may be in the best interest of the reorganized Debtors.

3.      Injunction. As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to § 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, debtor or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; provided, however, that each holder of a contested Claim or Interest may continue to prosecute its Proof of Claim in accordance with the Plan and all holders of Claims and Interests shall be entitled to enforce their rights under the Plan.  This injunction shall not affect any creditor's ability to enforce rights against a non-debtor and non-debtor property.

4.      Waiver and Release. Confirmation shall constitute waiver and release of the right to pursue litigation and causes of action against the Debtors, which release is supported by the requirements of this Plan and covenants contained herein.

5.      Retention of Claims.  The Confirmation Order shall constitute a finding that the Debtors do not waive, release or discharge, but rather retain and reserve, any and all pre-petition claims and any and all post-petition claims that they could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by the Bankruptcy Code, by the Bankruptcy Rules, or by the Local Rules of this Court, including without limitation all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to §§ 545, 546, 547, 548 and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Plan.  Further, the Debtors retain their rights to assert and pursue all claims under § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

6.      Binding Effect.  Subject to the occurrence of the Effective Date, on and after the Confirmation Date the provisions of the Plan shall be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtors and be binding upon any holder of a claim against the Debtors or their property, and such holder's respective successors and assigns, whether or not the claim is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

## XII.  RELEASE OF TITLE TO PROPERTY

1.      Vehicles. Upon the satisfaction or other discharge of a security interest in a motor vehicle, mobile home, or in any other Property of the Estate for which the certificate of title is in the possession of a Secured Creditor, the Secured Creditor shall within ten (10) days after

demand and, in any event, within thirty (30) days of receipt of the payment in full pursuant to the Plan, release its security interest on the title or certificate as the Division of Motor Vehicles prescribes and mail or deliver the certificate and release to the Debtors. Confirmation of this Plan shall impose an affirmative duty on each such Secured Creditor to comply with this provision, which shall be enforced by either the filing of a contested matter or adversary proceeding with the Court prior to or after the closing of the case. The Debtors specifically reserve the right to reopen this case under § 350(b) to pursue any and all rights and claims provided for herein.

2. <u>Real Property</u>. Pursuant to N.C. Gen. Stat. § 45-36.9, upon the satisfaction or other discharge of a security interest in real property for which a Creditor holds a properly secured mortgage, the Secured Creditor shall within thirty (30) days after demand or within thirty (30) days of payment in full pursuant to the Plan, submit for recording with the office of the Register of Deeds for the applicable county a satisfaction of its security interest and mail or deliver the recorded satisfaction document or documents to the Debtors. The failure of any such party to comply with this section shall result in the imposition of statutory damages of $1,000.00, actual damages, costs and legal fees as provided for by N.C. Gen. Stat. § 45-36.9(c). Confirmation of this Plan shall impose an affirmative and direct duty on each such Secured Creditor to comply with this provision, which shall be enforced in a proceeding filed with the Court prior to or after the closing of this case. The Debtors specifically reserve the right to reopen this case under § 350(b) to pursue the rights and claims provided for herein including all remedies for damages and attorneys' fees under applicable state and federal statutes.

## XIII.  DISCHARGE

Confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code.  The Debtors will not be discharged from any debt excepted from discharge under § 523 except as provided by Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

*Rest of page blank.  Signatures follow.*

Respectfully submitted, this the 18th day of May, 2018.

**DAVID F. MILLS, P.A.**

By: *David F. Mills*
N.C. State Bar #18326

By: *Patricia L. Mallory*
N.C. State Bar #50851

1559-B Booker Dairy Road
Smithfield, NC 27577
Telephone:  (919) 934-7235
Facsimile:  (919) 989-1529
Email:  david@mills-law.com
Attorneys for Debtors

Submitted by:

*/s/ Hobert K. Sanderson, Jr.*
*/s/ Denise C. Sanderson*
Chapter 11 Debtors