**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

IN RE:

**HOBERT K. SANDERSON, JR.**                           **Case No.: 17-05040-5-JNC**
**DENISE C. SANDERSON**                                   **Chapter 11**

      **DEBTORS.**

**DISCLOSURE STATEMENT**

Dated:  May 18, 2018.

Pursuant to the provisions of § 1125 of the United States Bankruptcy Code (11 U.S.C. §§ 101, *et seq.*) and Rule 3017 of the Federal Rules of Bankruptcy Procedure, the Debtors herein submit the following information regarding their Plan of Reorganization dated May 18, 2018 (the "Plan"):

**I.  INTRODUCTION**

**A.**    **Purpose of This Document**

The purpose of this disclosure statement (the "Disclosure Statement") is to provide each holder of a claim against the Debtors with adequate information about the Debtors (sometimes referred to as the "Plan Proponents") and the Plan so that each holder of a claim may make an informed decision about whether to accept or reject the Plan.  To that end, attached hereto are the following exhibits:

    **Exhibit A:**  Summary of the Debtors' Assets.
    **Exhibit B:**  Summary of the Debtors' Liabilities.
    **Exhibit C:**  The Debtors' Liquidation Analysis, which is an analysis of the amount unsecured creditors would receive if the Debtors' assets were liquidated on the Effective Date of the Plan.
    **Exhibit D:**  Summary of projected income and expenses.

*Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.*

This Disclosure Statement describes:

- The Debtors and significant events during the bankruptcy case.
- Who can vote on or object to the Plan.
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan.
- Why the Debtors believe the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation.
- The effect of confirmation of the Plan.

The **Plan** describes:

- How the Debtors propose to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed); and
- The classification of claims and interests and the treatment of the classes of claims and interests, including a description of whether each class is impaired or unimpaired.

**Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.**

**B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

*1.      Time and Place of the Hearing to Confirm the Plan*

The hearing at which the Court will determine whether to finally approve this Disclosure Statement and confirm the Plan will be scheduled by the Court.  You will receive notice of the date, time, and location.

*2.      Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the **enclosed ballot and return the ballot to the Debtors' attorney at the address shown on the ballot by 5:00 p.m. on the ballot deadline stated on the ballot.**  See information below for a discussion of voting eligibility requirements.

**Your ballot must be received by the date set by the Court or it will not be counted.**

*3.      Deadline For Objecting to Adequacy of Disclosure Statement and Confirmation of Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon the Debtors' counsel by the date set by the Court.

*4.      Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact David F. Mills, Counsel for the Debtors, whose contact information is found at the end of this Disclosure Statement.

**C.      Disclaimer**

*The Court has conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan.*

All parties are advised and encouraged to read this Disclosure Statement and the Plan in their entirety before voting to accept or reject the Plan.

Statements made in this Disclosure Statement are qualified by reference to the Plan itself and all exhibits attached thereto.  The statements made in this Disclosure Statement are made only as of the date hereof.  No assurances exist that the statements contained herein will be correct at any time hereafter.

The information contained in this Disclosure Statement is included for purpose of soliciting acceptances of the Plan and may not be relied upon for any purpose other than to determine how to vote on the Plan. No representations concerning the Debtors are authorized by the Debtors other than as set forth in this Disclosure Statement. Any other representations or inducements made to solicit your acceptance that are not contained in this Disclosure Statement should not be relied upon by you in arriving at your decision to accept or reject the Plan.

With respect to adversary proceedings, contested matters, other actions or threatened actions, this Disclosure Statement shall not constitute or be construed as an admission of any fact or liability, stipulation, or waiver; rather, this Disclosure Statement shall constitute statements made in connection with settlement negotiations.

This Disclosure Statement shall not be admissible in any non-bankruptcy proceeding involving the Debtors or any other party. Furthermore, this Disclosure Statement shall not be construed to be advice on the legal effects, including, but not limited to, the tax effect of the Debtors' Plan. You should consult your legal or tax advisor on any questions or concerns regarding tax or other legal consequences of the Plan.

Valuations and liabilities are estimated. While efforts have been made to be complete and accurate, the Debtors are unable to warrant or represent full and complete accuracy of the information contained herein.

No representation concerning the Debtors, particularly regarding future business operations or the value of the Debtors' assets, has been authorized by the Debtors except as set forth in this Statement. You should not rely on any other representations or inducements offered to you to secure your acceptance or decide how to vote on the Plan.  Further, much of the information contained herein consists of projections of future performance. While every effort has been made to ensure that the assumptions are valid and that the projections are as accurate as can be made under the circumstances, the Debtors have not undertaken to certify or warrant the absolute accuracy of the projections.  No known inaccuracies are set forth herein.

The information contained herein is not the subject of a certified audit or formal appraisals.

## II.  BACKGROUND

### A.    Description and History of the Debtors' Business

The Debtors are individuals, a married couple, residing in Jones County, North Carolina.  They own certain real estate and improvements in Jones County.  The Debtors are in the business of farming wheat, soybeans, and chickens and have farmed for the past 40 years.  Mr. Sanderson's family has farmed in the area for many years before that.   Historically, the Debtors have grown tobacco, cotton, corn, soybeans, and wheat.  The Debtors grow chickens under the trade name "C&D Farms" pursuant to a grower production contract with Case Farms, LLC (the "Case Contract").

### B.    Insiders of the Debtors

The Debtors are involved in several business operations and, like most farmers in Eastern North Carolina, engage in farming in conjunction with family members with varying degrees of formalities.

When dealing with farm equipment and other non-titled assets, it is sometimes difficult to identify which assets belong to whom. The Debtors have done the best they can to correctly identify those assets that belong to them and to distinguish those from assets owned by other family members or related entities.

One or both of the Debtors is involved in the following farming entities:

Wyse Fork Broiler Farm, LLC: Mr. Sanderson is owner of a 1/3 membership interest in this entity. His brother, Michael Sanderson, is the managing member, and holds a 2/3 membership interest.

Sanderson & Son Farms: This is a general partnership in which the Debtors have farmed historically. In addition to the Debtors, the partners include Mr. Sanderson's parents, Hobert Sanderson, Sr., and Margaret Sanderson.

### C.    Management of the Debtor Before and During the Bankruptcy

The Debtors personally operate and manage their farming operation.

### D.    Events Leading to Chapter 11 Filing

The Debtor began to experience financial troubles as a result of poor crop yields in 2014 and 2015. Then, in 2016, Hurricane Matthew severely damaged the Debtors' crops resulting in yet another year of poor crop yields. Low commodity prices added to the misery. In 2017, the Debtors were unable to get operating financing and therefore did not conduct any row crop operations. Instead, they leased some farmland and equipment they owned to family members.

The Debtors' poultry operation has and continues to run effectively and efficiently. Prepetition, Rabo AgriFinance LLC ("Rabo") was the beneficiary of an assignment of the proceeds of the poultry operation. The amount taken by Rabo from each flock was excessive in light of the reasonable and necessary cost of producing each flock. A key element of the Plan is the restructuring of Rabo's repayment in order to insure continuous and adequate revenue for the poultry farm.

A number of creditors filed lawsuits against one or both of the Debtors, threatening the continued viability of the farming operation. Creditors filing lawsuits include Joshan Enterprises, LLC; De Lage Landen Financial Services, LLC; Monsanto, Inc.; Susquehanna Commercial Finance, Inc.; BB&T; Bennie Eatmon; and Crop Production Services, Inc. In addition, Crop Production Services initiated foreclosure of two (2) deeds of trust at 16 SP 20 and 17 SP 16 before the Jones County Clerk of Superior Court. The property to be foreclosed included the Debtors' residence.

Rabo, the Debtors' largest single creditor, declared its claims in default and accelerated the amount due when the Debtors failed to pay their 2016 Crop Production Line of Credit, as described in the Plan.

In an effort to increase efficiency and reduce debt, the Debtors conducted a voluntary prepetition auction of certain farm equipment unnecessary to the Debtors' future operations. The sale was conducted by E.B. Harris Auction Co. on or about March 4, 2017. The sale generated gross proceeds of $313,173.00 and net proceeds were distributed to the Jones County Tax Collector, AgCarolina, Rabo, and Deere Credit in accordance with their lien interests.

In 2018, the Debtors intend to farm 2,400 acres, including 2,000 acres of soybeans and 400 acres of wheat. Debtors will continue their poultry operation under the Case Contract.

The Debtors anticipate a reorganization through this Chapter 11 proceeding in order to maintain existing operations, retain maximum value of the business, and to maximize return to creditors. The Debtors represent that a reorganization and continuation of their farming operations will generate the greatest source of funds for the benefit of their creditors.

### E.    Significant Events During the Bankruptcy Case

Since filing on October 13, 2017, the Debtors have complied with all Bankruptcy Rule 4002 requirements. The 11A status conference was held November 2, 2017. The 341 Meeting of Creditors was held on November 14, 2017, in Greenville, North Carolina.

The Court approved the Debtors' employment of David F. Mills, P.A., as counsel for the Debtors; Mike Gurkins, Country Boys Auction & Realty, Inc., as auctioneer; and Dale Dunn, RDD Auction, as personal property appraiser.

Other significant events during this case include:

- Order for Interim Use of Cash Collateral to maintain and continue the C&D poultry operation [D.E. 230];
- Interim Order Authorizing Post-Petition Financing for production of the 2018 crop [D.E. 217];
- The Debtors filed a Motion to Sell the following real property free and clear of liens on April 17, 2018 [D.E. 190], Amended Motion on April 27, 2018 [D.E. 225]:  PIN 449695126500, 154.9 acres, more or less, Jones County, for a proposed price of $480,000.00.  It appears that, if approved, the net proceeds will be payable to Rabo in accordance with its lien interest.
- The Debtors filed a Motion to Sell the following farm equipment free and clear of liens on May 4, 2018 [D.E. 240] at public auction on May 31, 2018:

  JD 9965 cotton picker
  1993 International bus vin # 1HVBAZRL3PH534879
  1985 Ford fire truck vin # 1FDYD80U1EVA15123
  1985 Fruehauf van vin # 1H2V04823FE027361
  2008 Shellborne 32' stripper
  2012 KBH boll buggy
  2010 KBH module builder
  1998 Taylor module builder SN 9539A
  1998 Taylor module builder SN 9551

It appears that, if approved, the net proceeds will be payable to Rabo in accordance with its lien interest.

### F.    Projected Recovery of Avoidable Transfers

The Debtors have not yet completed their investigation with regard to prepetition transactions. If you received a payment or other transfer within 90 days of the bankruptcy, or other transfer avoidable under the Code, the Debtors may seek to avoid such transfer.   At present, Debtors are aware of the following judgment which may constitute an avoidable preference:  *Susquehanna Commercial Finance, Inc. vs. Hobert K. Sanderson, Jr., Denise C. Sanderson, et al.*; Jones County District Court, 17 CVS 94, entered September 25, 2017.

### G.    Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtors reserve the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.

### H.    Current and Historical Financial Conditions

The identity and fair market value of the estate's assets and liabilities are listed in **Exhibit A and B** hereto, respectively.  The value of the farm equipment is based on the best estimates of the Debtors as of the date of this Disclosure Statement, but an appraisal is pending.

Monthly reports of the Debtors' post-petition operations are available upon request from Debtors' Counsel.

### III.  SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**The Plan which accompanies this Disclosure Statement is incorporated by reference. Article IV of the Plan describes the classification of claims and interests and the treatment of the classes of claims and interests, including a description of whether each class is impaired or unimpaired.**

### A.    What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes, provides whether each class of claims or equity interests is impaired or unimpaired by the Plan, and describes how the claims in each class will be treated.  **If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.**

### B.    Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

#### 1.    Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtors' Chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtors in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the Effective Date of the Plan unless a particular claimant agrees to a different treatment.  The "Effective Date" is defined in the Plan.

**The treatment of administrative expenses is set forth in Article III of the Plan, to which your attention is directed for a more particular description of such treatment.**

2.      *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a claim agrees otherwise, it must receive the present value of such claim in regular installments paid over a period not exceeding 5 years.

**The treatment of priority tax claims is set forth in Article III of the Plan.  The treatment of *ad valorem* tax claims is set forth in Article IV (Class 2) of the Plan.  Your attention is directed to these provisions for a more particular description of such treatment.**

### C.    Classes of Claims and Equity Interests

The following classes are also addressed in the Plan.  **The Plan describes the proposed treatment that these classes will receive under the Plan.**

1.      *Classes of Priority Unsecured (Non-Tax) Claims*

Certain priority claims that are referred to in § 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the Effective Date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

**The treatment of priority non-tax claims is set forth in Article IV of the Plan, Class 1, to which your attention is directed for a more particular description of such treatment.**  The Debtors are not aware of any such claims.

2.      *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtors' bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.  **The classification and treatment of secured claims is set forth in Article IV of the Plan, Classes 3 through 8, to which your attention is directed for a more particular description of such treatment.**

3.      *Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.  **The treatment of general unsecured claims is set forth in Section IV of the Plan, Class 12 (see also Classes 9-11), to which your attention is directed for a more particular description of such treatment.**

### D.    Means of Implementing the Plan

1.      *Source of Payments*

Payments and distributions under the Plan will be funded by the following:

- Liquidation of certain real and personal property as described in the Plan.
- Continuing farm revenue.

- Proceeds of the Case Farms poultry grower contract.
- USDA government farm program payments.
- Federal Crop Insurance proceeds.
- Revenue if any from Wyse Fork Broiler Farm, LLC.

    2.    *Post-Confirmation Management*

The Debtors are individuals and will continue to manage their farming operation.

**E.    Risk Factors**

The proposed Plan has the following risks:

1.    Unfavorable weather conditions and natural disasters.
2.    Fluctuations in market prices of products.
3.    Fluctuations in input costs such as fuel, labor, land rent, etc.
4.    Labor shortages.
5.    Unforeseen regulatory changes on matters such as immigration, environment, and labor; effects of the 2018 Farm Bill; unforeseen changes to the federal crop insurance program; and unforeseen changes to farm support programs.
6.    Unforeseen criminal activity by a Debtor, employee, or other person.
7.    Uninsured losses by fire, weather, pests, or other casualty.  The Debtors' property is insured, with appropriate loss payee designations.
8.    Death or incapacity of the Debtors.
9.    Inability to obtain future operating financing.
10.    Loss of production contract(s).
11.    Inability to secure the lease of adequate farmland.

**F.    Executory Contracts and Unexpired Leases**

The Plan lists all executory contracts and unexpired leases that the Debtors will assume under the Plan. Assumption means that the Debtors have elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. The Plan also lists how the Debtors will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption or rejection of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not specifically assumed by the Plan or by other order of the Court will be rejected under the Plan.

**The deadline for filing a proof of claim for a claim arising from the rejection of a lease or contract is 90 days from the confirmation of the Plan.**   Any such claim will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

### G.   Tax Consequences of Plan

*Creditors concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.*

The following discussion is a summary of certain federal income tax aspects of the Plan for general information only. It should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular holder of a Claim. This discussion does not purport to be a complete analysis or listing of all potential tax factors.

The following discussion is based upon existing provisions of the Internal Revenue Code ("IRC"), existing regulations thereunder, and current administrative rulings and court decisions. No assurance can be given that legislative or administrative changes or court decisions may not be forthcoming which would require significant modification of the statements expressed in this section. Moreover, the tax consequences to holders of the Claims may vary based upon the individual tax circumstances of each such holder. Nothing herein purports to describe any state, local or foreign tax consequences.

**NO RULING HAS BEEN SOUGHT OR OBTAINED FROM THE IRS WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO OPINION OF COUNSEL HAS BEEN OBTAINED BY THE DEBTOR WITH RESPECT THERETO. NO REPRESENTATIONS OR ASSURANCES ARE BEING MADE WITH RESPECT TO THE FEDERAL INCOME TAX CONSEQUENCES AS DESCRIBED HEREIN.  CERTAIN TYPES OF CLAIMANTS AND INTEREST HOLDERS MAY BE SUBJECT TO SPECIAL RULES NOT ADDRESSED IN THIS SUMMARY.  THERE MAY ALSO BE STATE, LOCAL, OR FOREIGN TAX CONSIDERATIONS APPLICABLE TO A HOLDER OF A CLAIM OR INTEREST, WHICH ARE NOT ADDRESSED HEREIN. EACH HOLDER OF A CLAIM OR INTEREST AFFECTED BY THE PLAN MUST CONSULT, AND RELY UPON, HIS OR HER OWN TAX ADVISOR REGARDING THE SPECIFIC TAX CONSEQUENCES OF THE PLAN WITH RESPECT TO THAT HOLDER'S CLAIM OR INTEREST.  THIS INFORMATION MAY NOT BE USED OR QUOTED IN WHOLE OR IN PART IN CONNECTION WITH THE OFFERING FOR SALE OF SECURITIES.**

#### 1. Tax Consequences to the Debtors

Under the IRC, a taxpayer generally must include in gross income the amount of any discharge of indebtedness income realized during the taxable year. Section 108(a)(1)(A) of the IRC provides an exception to this general rule, however, in the case of a taxpayer that is under the jurisdiction of a bankruptcy court in a case brought under the Bankruptcy Code where the discharge of indebtedness is granted by the court or is pursuant to a plan approved by the court, provided that the amount of discharged indebtedness that would otherwise be required to be included in income is applied to reduce certain tax attributes of the taxpayer. Section 108(e)(2) of the IRC provides that a taxpayer will not realize income from the discharge of indebtedness to the extent that satisfaction of the liability would have given rise to a deduction. As a result of §§ 108(a)(1)(A) and 108(e)(2) of the IRC, the Reorganized Debtor may not recognize any income from the discharge of indebtedness through the Chapter 11 case. It is not likely that the confirmation of the Plan will have a material tax effect on the reorganized Debtor.  The Debtors are individuals and the tax for this bankruptcy estate is reported on Form 1041 (trust and estate return) but Form 1040 (individual tax) is used as a worksheet.  The tax calculated on Form 1040 is transferred to Form 1041.  The bankruptcy estate received from the prepetition debtor its holding period and tax basis in assets in the bankruptcy estate. In other words, the assets of the reorganized Debtor have the same holding period and tax basis as that of the prepetition debtor.

*Exemption from Transfer Taxes.*  Pursuant to § 1146(a) of the Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

2.     *Tax Consequences to Creditors*

A Creditor who receives cash or other consideration in satisfaction of any Claim may be required to recognize ordinary income to the Internal Revenue Service or other tax authorities.  The impact of such ordinary income, as well as the tax year for which the income will be recognized, will depend upon the individual circumstances of each Claimant, including the nature and manner of organization of the Claimant, the applicable tax bracket for the Claimant, and the taxable year of the Claimant.  Each creditor is urged to consult with its tax advisor regarding the tax implications of any payments or distributions under the Plan.

**THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY AND NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING OR CONSULTATION WITH A TAX ADVISOR. THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN.  SUCH CONSEQUENCES MAY ALSO VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST.  ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH HIS OR HER OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN.**

**H.     Payments under the Plan are in Full and Final Satisfaction of Debt**

Except as otherwise provided in § 1141 of the Bankruptcy Code, or the Plan, the payments and distributions made pursuant to the Plan will be in full and final satisfaction, settlement, release, and discharge, as against the Debtors, of any and all claims against the Debtors, as defined in the Bankruptcy Code, including, without limitation, any claim accrued or incurred on or before the confirmation date, whether or not (i) a proof of claim is filed or deemed filed under § 501 of the Bankruptcy Code, (ii) such claim is allowed under § 501, or (iii) the holder of such claim has accepted the Plan.

**IV.  CONFIRMATION REQUIREMENTS ANDPROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

**A.     Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the

requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Debtors believe that Classes 1-12 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. Debtors believe that there are no unimpaired classes.

### 1.    *What Is an Allowed Claim?*

Only a creditor with an allowed claim has the right to vote on the Plan.  Generally, a claim is allowed if either (1) the Debtors have scheduled the claim on the Debtors' schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated; or (2) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim.  When a claim is not allowed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

**The deadline for filing a proof of claim in this case for a non-governmental creditor is February 12, 2018.  The deadline for a governmental entity to file a proof of claim in this case is April 11, 2018.**

### 2.    *What Is an Impaired Claim?*

As noted above, the holder of an allowed claim has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

**Even if you are not entitled to vote on the Plan, you have a right to object to the confirmation of the Plan and to the adequacy of this Disclosure Statement.**

### 3.    *Who is **Not** Entitled to Vote*

The holders of the following types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed" unless they have been "allowed" for voting purposes;
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan.

**Even if you are not entitled to vote on the Plan, you have a right to object to the confirmation of the Plan and to the adequacy of the Disclosure Statement.**

### 4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B. **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B(2).

### 1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

### 2. *Treatment of Non-Accepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

**The Debtors believe that the Plan is in the best interest of all creditors and strongly recommends that all parties entitled to vote cast their ballots <u>in favor of accepting the Plan</u>. Nevertheless, the Debtors have requested that the Bankruptcy Court use the "cram down" provisions described above to confirm the Plan over the rejection of any non-accepting Class.**

**You should consult your own attorney if a "cram down" confirmation will affect your claim, as the variations on this general rule are numerous and complex.**

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is impaired under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

A plan "does not discriminate unfairly" if the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are intertwined with those of the non-accepting class, and no class receives payments in excess of that which it is legally entitled to receive. The Debtors believe that, under the Plan, all holders of impaired Claims are treated in a manner that is consistent with the treatment of other holders of Claims with which any of their legal rights are intertwined. Accordingly, the Debtors believe the Plan does not discriminate unfairly as to any impaired class of Claims.

The condition that a plan be "fair and equitable" generally requires that an impaired class that has not accepted the plan must receive certain specified recoveries, as set forth in Section

1129(b)(2) of the Bankruptcy Code. The Debtors believe that the Plan meets the thresholds specified in this section of the Bankruptcy Code.

### C.    Liquidation Analysis/Best Interests

Notwithstanding acceptance of the Plan in accordance with Section 1126 of the Bankruptcy Code, the Bankruptcy Court must find, whether or not any party in interest objects to Confirmation, that the Plan is in the best interests of the Creditors.  Bankruptcy courts have generally defined "best interests" as the Bankruptcy Code's requirement that, under any plan of reorganization, each member of an impaired class of creditors must receive or retain, on account of its claim, property of a value, as of the effective date of the plan, that is not less than the amount such creditor would receive or retain if the Debtors' estate was liquidated under Chapter 7 of the Bankruptcy Code. The Debtors believe that the Plan is in the best interests of all Creditors.

To determine what the Creditors would receive if the Debtors' estate was liquidated under Chapter 7, the dollar amount that would be generated from the liquidation of the Debtors' assets in a Chapter 7 liquidation case needs to be considered. The amount that would be available for the satisfaction of Claims would consist of the Debtors' interest in the net proceeds further reduced by the amount of any Secured Claims, the costs and expenses of the liquidation, such additional Administrative Claims and Priority Claims that may result from the liquidation of the Debtors' estate, and the costs of administration of this Chapter 11 case prior to Confirmation. These calculations are set forth in a Liquidation Analysis attached to this Disclosure Statement as **Exhibit C**.

**Because any projections which may be provided by the Debtors are based upon a number of assumptions and are inherently subject to significant uncertainties that are beyond the Debtors' control, there can be no assurance that the liquidation values would, in fact, be realized in the event of a liquidation under Chapter 7 or that the financial projections set forth herein will be realized. Actual results may be higher or lower than those shown herein and in the exhibits, possibly by material amounts.**

### D.    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that the Court must find that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtors or any successor to the Debtors, unless such liquidation or reorganization is proposed in the Plan.  The Debtors believe they will be able to meet their obligations under the Plan.

### 1.    *Ability to Initially Fund Plan*

The Debtors believe that they will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.  Such funds will be available either from farm revenue or the liquidation of unencumbered assets.

### 2.    *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Debtors have obtained postpetition financing allowing them to plant and cultivate crops for the 2018 year.  The Debtors must also show that they will have enough cash over the life of the Plan to make the required Plan payments.  The Plan Proponent has provided projected financial information. Those projections are listed in **Exhibit D.**

***You should consult with your counsel, accountant, or other financial advisor if you have any***

*questions pertaining to these projections.*

## V.  EFFECT OF CONFIRMATION OF PLAN

### A.      Vesting of Property of the Estate.

Pursuant to § 1141(b) of the Bankruptcy Code, except as otherwise provided in the Plan, the confirmation of the Plan will vest all property of the estate in the Debtors.

### B.      Injunction.

As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or any hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to Section 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interest, Debtor, or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, aware, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a set-off or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Notwithstanding the foregoing, the Plan does not release or waive any claims the Debtors may have against any party in interest.

**Even though a creditor may choose not to vote, or may vote against the Plan, the creditor will be bound by the terms of the Plan if the Plan is confirmed by the Court.**

### C.      Modification of Plan

The Debtors may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new Disclosure Statement and/or re-voting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

### D.      Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtors, or such other party as the Court shall designate in the Confirmation Order, shall file a motion with the Court to obtain a Final Decree to close the case.  Alternatively, the Court may enter such a Final Decree on its own motion.

## VI.  RECOMMENDATION, SOLICITATION, AND CONCLUSION

**THE DEBTORS BELIEVE THAT THE PLAN PROVIDES THE GREATEST AND EARLIEST RECOVERY TO CREDITORS AND IS IN THE BEST INTEREST OF CREDITORS. THEREFORE, THE DEBTORS RECOMMEND THAT ALL CREDITORS VOTE TO ACCEPT THE PLAN.**

## VII.  OTHER SOURCES OF INFORMATION AVAILABLE

Additional motions, affidavits, orders, or other documentation that might be of interest to any holder of a claim against the Debtors are shown on the docket sheet maintained by the office of the Clerk of the Bankruptcy Court.  Copies of the docket sheet and actual items can be obtained from the Clerk's office:

Hon. Stephanie Butler, Clerk
U.S. Bankruptcy Court
P.O. Box 791
Raleigh, NC  27602
(919) 856-4752

Information can also be obtained from Debtors' counsel at the address below.

This, the 18th day of May, 2018.

**DAVID F. MILLS, P.A.**
Attorneys for the Debtor(s)
1559-B Booker Dairy Rd.
Smithfield, NC 27577
Telephone:  (919) 934-7235
Facsimile: (919) 989-1529
Email: david@mills-law.com

By:  *s/ David F. Mills*
         David F. Mills
         State Bar No: 18326

**EXHIBIT "A"**

**ASSETS**

| | | |
|---|---|---|
| Real Estate: | $ | 2,678,705.00 |
| Equipment: | $ | 400,000.00[1] |
| Cash/DIP | $ | _____ |
| Motor Vehicles | $ | 97,375.00 |
| Jones County Cotton Gin, Inc.  (5,336 shs.) | $ | 64,032.00[2] |
| Wyse Fork Broiler Farm, LLC (1/3 interest) | $ | 0.00[3] |
| SIRS of NC, LLC (1/3 interest) | $ | 0.00[4] |
| Note and Deed of Trust--SIRS of NC, LLC | $ | 125,000.00[5] |
| Southern Farm Bureau Life Ins. | $ | 9,000.00 |
| | | |
| **Total** | **$** | **$3,399,331.00** |

---

[1] Estimated; appraisal pending.
[2] Based on estimated value of $16.00 per share, with a marketability discount of 25%.
[3] A North Carolina limited liability company; debtor in Chapter 12 (E.D.N.C., 18-00380-5-JNC).
[4] A North Carolina limited liability company.  The LLC owns unimproved real estate in Carteret County, North Carolina which is subject to indebtedness.
[5] Estimated liquidation value.

| Exhibit B | | | | |
|---|---|---|---|---|
| **LIST OF LIABILITIES** | | | | |
| | Claim No. | Balance | | |
| **Priority Claims** | | | | |
| Internal Revenue Service | 29 | $ 41,959.61 | | |
| NCDOR | | $ 29,676.91 | | |
| **TOTAL PRIORITY CLAIMS** | | $ 71,636.52 | $ | 71,636.52 |
| | | | | |
| **Secured Claims** | | | | |
| Ally Financial | 4 | $ 13,356.22 | | |
| Wells Fargo | 10 | $ 20,937.91 | | |
| BB&T f/k/a Susquehanna | 12 | $ 15,359.40 | | |
| De Lange Landen | 19 | $ 130,399.24 | | |
| Crop Production Services | 22 | $ 833,605.11 | | |
| Crop Production Services | 23 | $ 330,970.29 | | |
| Wells Fargo | 24 | $ 10,884.85 | | |
| M2 Lease Funds LLC | 25 | $ 135,446.35 | | |
| Rabo AgriFinance | 26 | $ 4,751,404.42 | | |
| Eric Pierce | 32 | $ 137,000.00 | | |
| Jones Co. Tax Collector | 33 | $ 14,049.00 | | |
| **TOTAL SECURED CLAIMS** | | $ 6,393,412.79 | $ 6,393,412.79 | |
| | | | | |
| **Unsecured Claims** | | | | |
| BB&T | 1 | $ 209.00 | | |
| Discover Bank | 2 | $ 10,000.15 | | |
| CNH Industrial | 3 | $ 9,113.49 | | |
| BB&T | 5 | $ 4,474.79 | | |
| BB&T | 6 | $ 498.00 | | |
| American Express | 7 | $ 1,369.87 | | |
| Royal Bank American Leasing | 8 | $ 50,886.65 | | |
| Monsanto | 9 | $ 124,165.93 | | |
| New State Funding | 11 | $ 147,803.75 | | |
| John Deere Finacial | 13 | $ 194,405.08 | | |
| Deere & Co. | 14 | $ 1,101.04 | | |
| Deere & Co. | 15 | $ 32,463.33 | | |
| Deere & Co. | 16 | $ 30,701.50 | | |
| Jefferson Capital | 17 | $ 1,572.48 | | |
| Jefferson Capital | 18 | $ 2,767.84 | | |
| Harvey Fertilizer | 20 | $ 29,486.10 | | |
| Capital One | 21 | $ 637.32 | | |
| Bennie Eatmon/LTB Mgmt. | 27 | $ 84,567.02 | | |
| Synchrony Bank | 28 | $ 1,418.23 | | |
| Synchrony Bank | 30 | $ 465.37 | | |
| LVNV Funding | 31 | $ 662.39 | | |
| Comenity Capital | 34 | $ 4,332.42 | | |

| | | | |
|---|---|---|---|
| Bank of America | | $        4,262.59 | |
| Chase | | $        1,551.58 | |
| Comenity Bank/Talbots | | $           444.30 | |
| Cpearl Beta Funding LLC | | $      68,997.00 | |
| Johnnie Sheppard Equip. | | $      21,000.00 | |
| Joshan Enterprises, LLC | | UNK | |
| Kinston Medical Specialists | | $           270.50 | |
| Midland Funding | | $        2,906.00 | |
| Mills International, Inc. | | $      11,554.71 | |
| Nordstrom FSB | | $        1,853.73 | |
| Nunn, Brashear, & Uzzell, P.A. | | $      27,231.10 | |
| Optimum Outcomes, Inc. | | $        4,378.00 | |
| QVC | | $           102.88 | |
| Snow Tractor & Equipment | | $        5,832.39 | |
| Strickland Bros. Entp. Inc. | | $        7,800.00 | |
| Tharrington Smith LLP | | $        4,114.11 | |
| TNB Visa/Target | | $           684.54 | |
| **Total Unsecured Claims:** | | $      896,085.18 | $      896,085.18 |
| **Total Liabilities** | | | $  7,361,134.49 |

# Liquidation Analysis:  Exhibit C

Hobert and Denise Sanderson

| | Assets | Lienholder | Lien Amount | Market Value | Exemptions | Equity |
|---|---|---|---|---|---|---|
| 5 | | | | | | |
| 6 | **Real Property** | | | | | |
| 7 | 1830 Guinea Town Road | CPS | | $ 164,000.00 | | |
| 8 | 449 Old Kinston-Trenton Road | 1. Rabo 2. CPS | | $ 1,257,556.00 | | $ - |
| 9 | NC 58 | 1. Rabo 2. CPS | | $ 68,732.00 | | $ - |
| 10 | Off NC 58 | 1. Rabo 2. CPS | | $ 118,570.00 | | $ - |
| 11 | Chinquapin Chapel Road | 1. Rabo 2. CPS | | $ 353,390.00 | | $ - |
| 12 | SR 1300 | CPS (Pierce) | | $ 103,001.00 | | $ - |
| 13 | Off SR 1122 | 1. Rabo 2. CPS | | $ 480,000.00 | | $ - |
| 14 | NC 58 & SR 1157 | CPS | | $ 21,212.00 | | $ - |
| 15 | 1718 Guinea Town Road (Remainder) | 1. Rabo 2. CPS | | $ 112,244.00 | | $ - |
| 16 | **Real Property Subtotal** | | | **$  2,678,705.00** | | |
| 17 | | Rabo | $  2,971,796.00 | | | |
| 18 | | CPS | $  1,164,576.00 | | | |
| 19 | | | | | | |
| 20 | **Equipment** | | | | | |
| 21 | John Deere 6430 Tractor | | | | | |
| 22 | John Deere 7830 Tractor | | | | | |
| 23 | CNH 7040 Tractor | | | | | |
| 24 | John Deere 9660 Combine | | | | | |
| 25 | John Deere 6700 Sprayer | | | | | |
| 26 | John Deere 5075 Tractor | | | | | |
| 27 | John Deere 9965 Cotton Picker | | | | | |
| 28 | 1978 Move All | | | | | |
| 29 | Gooseneck 30' Trailer | | | | | |
| 30 | 2012 Reddick Nitrogen Rig, 12' Row | | | | | |
| 31 | John Blue Sprayer, 120"B | | | | | |
| 32 | Reddick 60' Spray Boom | | | | | |
| 33 | 2009 Sunflower 9420 Seed Drill | | | | | |
| 34 | 2012 KMC 12 Row Ripper Bedder | | | | | |
| 35 | 2008 Chandler 18' Spreader | | | | | |
| 36 | 2006 Lewis Brothers Poluter Cleaner | | | | | |
| 37 | 1986 Newhoff 48' Drop Deck/Utility | | | | | |
| 38 | 1987 Jett Hopper Bottom | | | | | |
| 39 | 1991 Jett Hopper Bottom | | | | | |
| 40 | 1977 Hobbs Hopper Bottom | | | | | |
| 41 | 2007 Unverferth 9250 1000 Bushel Grain Cart | | | | | |

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 42 | 2008 Caterpillar Forklift | | | | | |
| 43 | 2009 Reddick Trencher | | | | | |
| 44 | 2009 John Deere 637 27' Disc. | | | | | |
| 45 | 2012 Unverferth 20' Field Cultivator | | | | | |
| 46 | 2011 John Deere MX7 7' Mower | | | | | |
| 47 | 2007 Rhino 14' Mower | | | | | |
| 48 | 2010 Rhino DB150 5' Side Mower | | | | | |
| 49 | 2007 Rhino 3 Way Blade | | | | | |
| 50 | Reynolds Land Plane | | | | | |
| 51 | 2011 John Deere 1435 Commercial Mower | | | | | |
| 52 | Predator Wind Rower | | | | | |
| 53 | Box Blade | | | | | |
| 54 | John Deere 0505 AMS Autotrac System | | | | | |
| 55 | John Deere GU 26 Greenstar GPS, Yield Map | | | | | |
| 56 | John Deere GT01 Greenstar GPS, Yield Map | | | | | |
| 57 | John Deere GT3T Greenstar GPS, Yield Map | | | | | |
| 58 | 2011 Rhino 2160 Long Arm Mower | | | | | |
| 59 | 2008 Shellbrorne 32' Stripper | | | | | |
| 60 | 2012 KBH Boll Buggy | | | | | |
| 61 | 2010 KBH Module Builder | | | | | |
| 62 | 1998 Taylor Module Builder SN: 9539A | | | | | |
| 63 | 1998 Taylor Module Builder SN: 9551 | | | | | |
| 64 | John Deere 1720 12 Row Planter | | | | | |
| 65 | Sweet Potato Plow | | | | | |
| 66 | 12,000 Gallon Aluminum Tank | | | | | |
| 67 | 6,000 Gallon Fiberglass Tank | | | | | |
| 68 | 6,000 Gallon Fiberglass Tank | | | | | |
| 69 | 6,000 Gallon Gas Tank | | | | | |
| 70 | 10,000 Gallon Fuel Tank | | | | | |
| 71 | 500 Gallon Portable Fuel Tank | | | | | |
| 72 | **Equipment Subtotal** | | | $ 400,000.00 | *Pending appraisal.* | |
| 73 | | | | | | |
| 74 | | Rabo | $ 2,971,795.86 | | | |
| 75 | | CPS | $ 1,164,575.40 | | | |
| 76 | | Total | $ 4,136,371.26 | $ 3,078,705.00 | $ - | $ - |
| 77 | | | | | | |
| 78 | **Motor Vehicles** | | | | | |
| 79 | 2013 Jeep Grand Cherokee | Wells Fargo Auto Finance | $ 10,884.85 | $ 17,640.00 | $ 5,000.00 | $ 1,755.00 |
| 80 | 2013 GMC Sierra Pickup LT | Wells Fargo Auto Finance | $ 20,937.91 | $ 27,425.00 | | $ 6,487.00 |
| 81 | 2012 GMC Yukon LT | Ally Financial | $ 13,356.22 | $ 21,150.00 | $ 3,500.00 | $ 4,294.00 |
| 82 | GMC Topkick | | | $ 10,000.00 | | $ 10,000.00 |
| 83 | Dodge Ram 1500 Pickup | | | $ 2,120.00 | | $ 2,120.00 |

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 84 | 2007 GMC Sierra Classic 1500 SL | | | $ 9,540.00 | $ 3,500.00 | $ 6,040.00 |
| 85 | International Bus | | | $ 1,500.00 | | $ 1,500.00 |
| 86 | Ford Fire Truck | | | $ 5,000.00 | | $ 5,000.00 |
| 87 | 1985 Fruehauf Bus | | | $ 1,500.00 | | $ 1,500.00 |
| 88 | 1988 Fruehauf Van | | | $ 1,500.00 | | $ 1,500.00 |
| 89 | **Motor Vehicles Subtotal** | | | **$ 97,375.00** | **$ -** | **$ 40,196.00** |
| 90 | | | | | | |
| 91 | **Miscellaneous** | | | | | |
| 92 | Checking Account/First Citizens 9193 | | | | | $ - |
| 93 | 5,336 Shs. Jones County Cotton Gin, Inc. | | | $ 64,032.00 | | $ 64,032.00 |
| 94 | Wyse Fork Broiler Farm, LLC | | | $ - | | $ - |
| 95 | SIRS of NC, LLC | | | $ - | | $ - |
| 96 | Note and Deed of Trust--SIRS of NC, LLC | | | $ 125,000.00 | $ - | $ 125,000.00 |
| 97 | Southern Farm Bureau Life Ins. (exempt) | | | | | $ - |
| 98 | **Miscellaneous Subtotal** | | | **$ 189,032.00** | | **$ 189,032.00** |
| 99 | | | | | | |
| 100 | **Value of Property and Equity subject to liquidation** | | | **$ 286,407.00** | | **$ 229,228.00** |
| 101 | | | | | | |
| 102 | **Less likely Chapter 7 Expenses** | | | | | |
| 103 | | | | | | |
| 104 | **Real Property** | | $ 2,678,705.00 | | | |
| 105 | Chapter 7 Auctioneer Fees (LR 6005-1) | | | | | n/a |
| 106 | 10% on first $25,000 | | | | | |
| 107 | 4% on balance | | | | | |
| 108 | | | | | | |
| 109 | Chapter 7 Trustee Commission (11 USC 326) | | | | | n/a |
| 110 | 25% on first $5,000 | | | | | |
| 111 | 10% on next $5,001 to $50,000 | | | | | |
| 112 | 5% on next $50,001 to $1,000,000 | | | | | |
| 113 | 3% on balance | | | | | |
| 114 | | | | | | |
| 115 | **Personal Property** | | $ 286,407.00 | | | |
| 116 | Chapter 7 Auctioneer Fees | | | | | |
| 117 | 20% on first $20,000 | | | | | $ (2,000.00) |
| 118 | 10% on next $50,000 | | | | | $ (5,000.00) |
| 119 | 4% on balance | | | | | $ (8,656.00) |
| 120 | | | | | | |
| 121 | Chapter 7 Trustee Commission | | | | | |
| 122 | 25% on first $5,000 | | | | | $ (1,250.00) |
| 123 | 10% on next $5,001 to $50,000 | | | | | $ (4,500.00) |
| 124 | 5% on next $50,001 to $1,000,000 | | | | | $ (11,820.00) |
| 125 | 3% on balance | | | | | |

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| 126 | | | | | | |
| 127 | Chapter 11 Administrative Claims (est.) | | | | | $ (75,000.00) |
| 128 | | | | | | |
| 129 | Priority Claims | | | | | $ (71,637.00) |
| 130 | | | | | | |
| 131 | Total likely Chapter 7 expenses | | | | | $ (179,863.00) |
| 132 | | | | | | |
| 133 | Total available for unsecured claims | | | | | $ 49,365.00 |

**Exhibit D**

**Projected Income 2018**

**Row Crops**

| | Acreage | Proj. Yield | Proj. Price | Income | |
|---|---|---|---|---|---|
| Wheat | 400 | 60 | 4.87 | $ 116,880.00 | |
| Soybeans | 1600 | 45 | 9.8 | $ 705,600.00 | |
| DC Soybeans | 400 | 40 | 9.8 | $ 156,800.00 | |
| **Total (crop acreage)** | **2400** | | | **$ 979,280.00** | |
| | | | | | |
| **Projected Costs** | | | | | |
| Fuel & Gasoline | | | | $ 25,000.00 | |
| Labor | | | | $ 30,000.00 | |
| Equipment/Property Ins. | | | | $ 36,000.00 | |
| Repairs | | | | $ 25,000.00 | |
| Leases | | | | $ 153,835.00 | |
| Utilites | | | | $ 12,000.00 | |
| Crop Ins. | | | | $ 20,000.00 | |
| Property Taxes | | | | $ 18,000.00 | |
| Ch 11 Admin Expenses | | | | $ 60,000.00 | |
| Fertilizer | | | | $ 50,000.00 | |
| Chemicals | | | | $ 40,000.00 | |
| Seed | | | | $ 100,000.00 | |
| Custom | | | | $ 14,000.00 | |
| Family Living | | | | $ 50,000.00 | |
| Interest--Operating Loan | | | | $ 10,000.00 | |
| Miscellaneous | | | | $ 25,000.00 | |
| **Total Expenses** | | | | **$ 668,835.00** | |
| | | | | | |
| **Row Crops Projected Surplus/(Deficit)** | | | | **$ 310,445.00** | **$ 310,445.00** |
| | | | | | |
| **Poultry Operation** | | | | | |
| Income (5 flocks per year) | | | | $ 175,000.00 | |
| Expense | | | | $ (100,000.00) | |
| **Poultry Surplus/(Deficit)** | | | | **$ 75,000.00** | **$ 75,000.00** |
| | | | | | |
| **Wyse Fork Broiler Farm, LLC** | | | | | **$ 12,000.00** |
| | | | | | |
| **Total Projected Net Income** | | | | | **$ 397,445.00** |
| | | | | | |
| **Plan Payments** | | | | | |
| IRS | | | | $ (9,273.00) | |
| NCDOR | | | | $ (6,721.00) | |
| Class 3 Rabo | | | | $ (140,000.00) | |
| Class 4 CPS | | | | $ (11,265.00) | |
| Class 5 Ally | | | | $ (6,959.00) | |
| Class 6 Wells Fargo | | | | $ (3,820.00) | |
| Class 7 Wells Fargo | | | | $ (5,701.00) | |
| Class 10 General Unsecured Creditors | | | | $ (6,200.00) | |
| Total Plan Payments | | | | | $ (189,939.00) |
| | | | | | |
| Projected Surplus/(Deficit) | | | | | $ 207,506.00 |